905 F.2d 580
 UNITED STATES of America, Appellee,
v.
Luis COLON, a/k/a "Louie," John Wilks, a/k/a "Anthony
Smith," a/k/a "Smitty," Theofanis Papathanasion,
a/k/a "Theodoros Papadopoulos,"
Christopher Spivey, and
Frederick Jackson,
Defendants.
Appeal of Luis COLON, a/k/a "Louie," Defendant-Appellant.
 No. 607, Docket 89-1249.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 4, 1990.
Decided May 18, 1990.
 
 Leonard J. Levenson, New York City, for defendant-appellant.
 Patrick J. Fitzgerald, Asst. U.S. Atty., S.D.N.Y. (Otto G. Obermaier, U.S. Atty., Samuel W. Seymour, Asst. U.S. Atty., New York City, on the brief), for appellee.
 Before KEARSE and WINTER, Circuit Judges, and LEVAL,* District Judge.
 WINTER, Circuit Judge:
 
 
 1
 This appeal raises questions concerning the United States Sentencing Guidelines ("U.S.S.G."), promulgated by the United States Sentencing Commission ("the Commission") under the authority of the Sentencing Reform Act of 1984, 18 U.S.C. Sec. 3551 et seq. (1988). Luis Colon appeals from a judgment of conviction entered after his plea of guilty to ten counts of a sixteen-count indictment charging violations of federal narcotics laws in the operation of a heroin distribution scheme. Count One charged that Colon and four others conspired to distribute, and to possess with intent to distribute, heroin, in violation of 21 U.S.C. Sec. 846. Counts Two, Three, Four, Five, Seven, Eight, Eleven and Thirteen charged Colon with distributing heroin within 1000 feet of a school on eight occasions in the spring of 1988, in violation of 21 U.S.C. Secs. 812, 841(a)(1), 841(b)(1)(C), and 845a(a). Count Sixteen charged him with possession of heroin with intent to distribute, in violation of 21 U.S.C. Secs. 812, 841(a)(1) and 841(b)(1)(C).
 
 
 2
 Judge Walker, who had previously held the Guidelines to be unconstitutional and therefore did not consider them binding, originally gave Colon a fifteen-year sentence. Upon remand for resentencing under the Guidelines in light of Mistretta v. United States, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), Judge Walker departed upward from the applicable Guidelines range of 57 to 71 months and again imposed a sentence of fifteen years on each count, to run concurrently. Colon argues that the upward departure was error because it was based on matters already accounted for by the Commission in setting the range. He also argues that statements made by him to the probation officer who prepared his presentence report, upon which the district court relied, should have been suppressed because they were offered without counsel being present and without advice regarding his right to remain silent. Because Judge Walker treated Colon's uncharged drug sales which he found to be part of the same scheme or plan as a ground for a discretionary upward departure instead of factoring them in the base offense level, we remand for resentencing.
 
 BACKGROUND
 
 3
 The instant prosecution arose out of an investigation of heroin distribution in the Hell's Kitchen neighborhood of Manhattan. Beginning in March 1988, undercover New York City police officers made several purchases of small amounts of heroin from Colon and others working with him. Colon personally made eight of these sales, involving eighty glassine envelopes with a total weight of approximately 4 grams. All eight of the transactions were conducted within 1000 feet of a school, in violation of 21 U.S.C. Sec. 845a(a). When Colon was arrested on May 12, 1988, he was found to be in possession of another 89 glassine envelopes of heroin. The total amount of heroin either purchased or seized from Colon by officers was some 8.1 grams.
 
 
 4
 A superseding indictment charged Colon in ten of its sixteen counts. Colon entered pleas of guilty to all ten counts on July 14, 1988. Before sentencing, a probation officer interviewed Colon in the course of preparing the presentence report. In that interview Colon stated that he had supported himself largely by selling drugs on a consignment basis. He reported that he purchased 100 glassine envelopes of heroin every two or three days and used twenty of the envelopes to support his own addiction, the remaining 80 being sold for profit. It appears that Colon was neither represented by counsel at the interview nor advised of his right to remain silent before answering the probation officer's questions. Although Colon's counsel may be presumed to have known that the interview would occur after the plea of guilty, there is no indication that counsel made any request to be included. Moreover, the objection to reliance upon Colon's statements to the probation officer for purposes of sentencing was not raised in the district court but was made for the first time on appeal.
 
 
 5
 Colon appeared for his first sentencing before Judge Walker on October 11, 1988. The judge indicated that he had previously held the Guidelines unconstitutional. He stated, however, that he did "refer to them for purposes of whatever general guidance they may provide." Judge Walker then explained that Colon's supervisory position in the heroin ring, his continuous drug trading, and his history of other serious crimes required a sentence of fifteen years' imprisonment on each count, the terms to run concurrently. The sentence also included twelve years' supervised release on each count and a $500 special assessment, representing a $50 assessment on each count of conviction.
 
 
 6
 Before Colon's appeal could be argued, the Supreme Court upheld the constitutionality of the Sentencing Guidelines in Mistretta v. United States, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Colon and the government thereafter agreed to a remand to Judge Walker for resentencing under the Guidelines, on the understanding that Colon preserved his right to appeal, under 18 U.S.C. Sec. 3742, from the newly imposed sentence.[1]
 
 
 7
 Colon appeared for resentencing on May 11, 1989. Judge Walker deemed the original presentence report and all previous submissions as resubmitted. Colon was given a base offense level of 16. This figure was arrived at, first, by grouping all the counts together pursuant to U.S.S.G. Sec. 3D1.2(d), which requires grouping of all counts and acts where "the offense level is determined largely on the basis of ... the quantity of a substance involved." U.S.S.G. Sec. 3D1.2(d) (June 15, 1988). The Guidelines section covering all ten of Colon's counts of conviction is U.S.S.G. Sec. 2D1.1(a)(3) (Oct.1987) (drug quantity provision). Offenses treated under that section are specifically included in Section 3D1.2(d)'s list of conduct categories to be grouped.
 
 
 8
 Because the eight sales charged to Colon were all made within 1000 feet of a school, in violation of the "schoolyard statute," 21 U.S.C. Sec. 845a(a) (1988), the quantities of heroin there involved were counted twice pursuant to U.S.S.G. Sec. 2D1.3(a)(2)(b). Accordingly, although the actual quantity of heroin bought or seized from Colon was 8.1 grams, the doubling of the schoolyard sales made the quantity near 12 grams for purposes of sentencing. That quantity produced, as indicated above, the base offense level of 16. See U.S.S.G. Sec. 2D1.1 (Oct.1987) (drug quantity table indicating base offense level of 16 for 10 to 19 grams of heroin).
 
 
 9
 Four points were added to the base offense level to reflect Colon's position as an "organizer or leader of a criminal activity that involved five or more participants." U.S.S.G. Sec. 3B1.1(a) (Oct.1987). Two points then were deducted for his free admission of his involvement in the crimes charged. U.S.S.G. Sec. 3E1.1(a) (Jan. 15, 1988) (reduction for "affirmative acceptance of personal responsibility" for criminal conduct). After these adjustments, Colon's offense level was 18. With a criminal history category of VI,[2] see U.S.S.G. Sec. 4A1.1 (Oct.1987) (criminal history), the applicable sentencing range for that offense level was 57 to 71 months. U.S.S.G. Ch. 5, Part A (Oct.1987) (sentencing table).
 
 
 10
 In a letter to Judge Walker dated April 3, 1989, the government urged an upward departure from the Guidelines range because the quantities charged in the indictment did not include quantities of drugs Colon admitted to selling in the presentence interview and therefore understated the gravity of Colon's offenses. Another ground urged by the government was the "mere happenstance" that Colon's conviction for a 1987 stabbing of his common-law wife, see supra note 2, had occurred subsequent to the conduct involved in the instant indictment. Had it occurred prior to that conduct, the government argued, Colon would be treated as a career offender under the Guidelines, see U.S.S.G. Sec. 4B1.1 (Jan. 15, 1988), inflating his sentencing range to 324 to 405 months (roughly 27 to 34 years).
 
 
 11
 After argument, Judge Walker departed upward from the Guidelines range, imposing the same sentence that he had imposed in October: 15 years' imprisonment on each count, to run concurrently; 12 years of supervised release; and $500 in special assessments, representing $50 on each count.
 
 
 12
 In the course of remarks following argument from counsel, the district judge suggested various grounds for the departure. First, he noted that "the defendant ran a street operation employing several workers.... [He] was the marketing and promotion director in effect for his area. He controlled and directed an organization dedicated to the sale of heroin." The judge also described him as "a street manager for a retail heroin organization."
 
 
 13
 Judge Walker also noted that the sentencing range under the Guidelines was determined on the basis only of quantities charged in the indictment--those either seized or purchased during the investigation by officers--and did not take into account the full amount of heroin sold by Colon and his coconspirators to others. He then undertook to estimate the rough volume Colon might have trafficked in, using as one factor in that calculation Colon's description of his sales practices as told to the probation officer in the presentence interview. He stated:
 
 
 14
 As noted, the defendant has been engaged in the organized sale of heroin for at least two years by his own admission, yet the guidelines would limit the offense level based on an amount of 12.03 grams. It is hardly a stretch of reason and logic to estimate that the defendant sold at least 500 grams over a two-year period. That would be as little as five grams a week. That would lead to a base offense level of 28 adjusted to 30 for a guideline range of 168 to 210 months.
 
 
 15
 On the other hand, the court is aware of the fact that when the drugs were sold in this case they were sold near a school. One doubles the amount of grams when that occurs, when a sale occurs near a school, so that to fit within the range of 168 to 210 months the defendant would be in that range if he or his organization sold 250 grams in two years near a school.
 
 
 16
 There is also information brought to the court's attention that the defendant purchased approximately $750 worth of drugs every two to three days of which he used $150 worth and he sold the balance for twice what he paid for it for a profit of each purchase of $600 or approximately $1200 a week. This calculation if carried forward would lead to a two-year total of $1200 a week as the bench mark of approximately $120,000.
 
 
 17
 Finally, Judge Walker addressed Colon's criminal history category as revised and found that it too was inadequate:
 
 
 18
 In my view the criminal history level of six, while it does result in an upward adjustment from the category five, does not reflect the fact that in 13 years of repeated arrests and incarceration this defendant has continuously returned to his life of violence and drug selling. Despite his repeated arrests, the most time he has ever served is one year on his first arrest in 1975 and the time that he is presently serving in this case.
 
 
 19
 Citing these and other factors as relevant background information under U.S.S.G. Sec. 1B1.4, Judge Walker determined that a sentence within the Guidelines range would not fulfill the purposes of sentencing set out in 18 U.S.C. Sec. 3553(a)(2) (1988):
 
 
 20
 [I]n my judgment the criteria set forth in section 3553 cannot be met by adherence to the guideline range in this case....
 
 
 21
 Under the circumstances, in my judgment an upward departure is mandated to reflect the seriousness of the crimes for which defendant stands convicted in the context of his role as a street manager for a retail heroin organization and as a perpetrator of violent criminal acts, indeed, as a drug seller for more than a decade.
 
 
 22
 Pursuant to 18 U.S.C. Sec. 3742(a) (1988), Colon has appealed from the sentence. He complains that the upward departure was error because his leadership role in the crimes and criminal history were already factored into the recommendation prepared under those Guidelines. He also argues that consideration of uncharged heroin sales was improper. Finally, Colon argues that his statements in the presentence interview should not have been considered in determining his sentence because they were made without the presence of counsel or cautions regarding his right to remain silent.
 
 DISCUSSION
 
 23
 The issues on this appeal arise largely from the fact that Colon's sentencing occurred at the very outset of judicial exploration of the wilderness of the Guidelines. Subsequent to Colon's sentencing, we have imposed various procedural requirements upon the application of the Guidelines. See, e.g., United States v. Palta, 880 F.2d 636, 640 (2d Cir.1989) (requiring notice and opportunity to contest upward departure from Guidelines sentencing range). We have also held that quantities of narcotics traded by a defendant as part of the same scheme or plan underlying the indictment, but neither seized nor charged, must be factored into the base offense level. See United States v. Schaper, 903 F.2d 891, 898 (2d Cir.1990). Because such quantities must be reflected in the base offense level, they may not serve as the basis for a discretionary upward departure. Although it may seem doubtful that Colon's sentence will be disturbed, we remand.
 
 A. Leadership Role and Criminal History
 
 24
 In reviewing an upward departure under the Guidelines, we have recognized a "wide discretion" in the district judge to consider and determine what circumstances might justify such a departure. See Palta, 880 F.2d at 639; United States v. Sturgis, 869 F.2d 54, 56 (2d Cir.1989). We have also indicated that the ultimate question on appellate review of an upward departure is whether the sentence is reasonable. See United States v. Correa-Vargas, 860 F.2d 35, 36-37 (2d Cir.1988); see also 18 U.S.C. Sec. 3742(e)(3) (1988) (appeals court shall determine whether sentence is "outside of the applicable guideline range, and is unreasonable"). Finally, we have described our standard as an allowance of "sensible flexibility" to sentencing courts. Sturgis, 869 F.2d at 57; Correa-Vargas, 860 F.2d at 40.
 
 
 25
 That flexibility is not unbounded, however. A district court contemplating an upward departure must, for instance, apprise the defendant of that possibility and the reasons underlying it and afford the defendant an opportunity to be heard as to why such a departure would not be warranted. See Palta, 880 F.2d at 640. Furthermore, we have held that an upward departure must be supported by a clear articulation on the record of the specific grounds underlying it. See United States v. Cervantes, 878 F.2d 50, 54 (2d Cir.1989); see also 18 U.S.C. Sec. 3553(c)(2) (1988) (requiring sentencing court to state "specific reason" for imposition of sentences outside Guidelines' range).
 
 
 26
 The Sentencing Reform Act provides that a district judge may impose a sentence outside the range indicated by Guidelines computation if "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. Sec. 3553(b) (1988). Such departures can be made in the court's discretion under one of two grants of authority. The first and more generally applicable method is contained in part 5K of the Guidelines. Section 5K2.0 tracks the statutory language of 18 U.S.C. Sec. 3553(b) regarding omissions in the Commission's consideration of offense factors and also indicates that departure may be warranted where "unusual circumstances" indicate that a particular factor is inadequately valued under the Guidelines. U.S.S.G. Sec. 5K2.0 (June 15, 1988); see United States v. Coe, 891 F.2d 405, 409 (2d Cir.1989).
 
 
 27
 The other route for departure is set forth in part 4A, governing the determination of the criminal history category. Section 4A1.3 states that "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range." U.S.S.G. Sec. 4A1.3 (Oct.1987).
 
 
 28
 Although the general authority to depart under Section 5K2.0 was cited by the government and by Colon's counsel in colloquy prior to the resentencing, Judge Walker did not specifically mention which provision was the basis for departing. His statements make it clear, however, that both the general authority under part 5K and the criminal history method under part 4A were implicated. His remarks regarding Colon's role as a "marketing and promotion director" and his discussion of the probable volume of Colon's weekly drug sales indicated bases for departure under U.S.S.G. Sec. 5K2.0. In contrast, Judge Walker's discussion of the inadequacy of criminal history category VI obviously involved a Section 4A1.3 departure.
 
 
 29
 With regard to the first possible ground for departure, it is unclear whether Judge Walker found that the four-point enhancement under U.S.S.G. Sec. 3B1.1(a) for Colon's role as "organizer or leader" failed to reflect his special culpability in supervising the distribution organization identified in the indictment. He did observe in the course of his statements supporting departure that Colon "ran a street operation employing several workers," was a "marketing and promotion director" for his area and "controlled and directed" the organization. In the midst of that discussion he also recited the by-then-apparent finding that the penalty of 57 to 71 months was "plainly insufficient." However, Section 3B1.1 sets out degrees of adjustment for role in the offense, see U.S.S.G. Sec. 3B1.1(a)-(b), and Colon had already been assigned the higher of the alternative adjustments applicable under that section, receiving four points as an "organizer or leader" rather than three as a "manager or supervisor." It may be that the district judge believed that Colon played a unique role that distinguished him from "ordinary organizers or leaders" of drug distribution rings, much as, say, Henry Ford or Alexander the Great were unique among automobile manufacturing "organizers" and military "leaders" respectively. If so, an upward departure would be justified. The district judge's remarks at sentencing, however, did not indicate whether he took that view of Colon's role, but this can be clarified upon remand.
 
 
 30
 Turning to Colon's criminal history, there may be grounds for a departure on the basis of the Guidelines' inadequacy in reflecting Colon's past criminal conduct and likelihood of committing further crimes. We are uneasy with the government's theory that Colon's "near miss" on the career offender status by itself can support an upward departure. Any system like the Guidelines involves line-drawing that appears arbitrary, but the system will fail if those lines are not observed. The fact that a defendant falls just below a line leading to a harsher sentence is by itself no more grounds for departing upward than the fact that a defendant falls just above the line is by itself grounds for departing downward. Rather, the assessment to be made under Section 4A1.3 concerns whether the designated criminal history category adequately reflects the seriousness of the defendant's past conduct viewed in its entirety and the likelihood of more such conduct in the future.
 
 
 31
 Judge Walker made such an assessment in determining that Colon's history justified an unusually severe punishment. He noted that the defendant's failure ever to serve more than one year in prison, despite thirteen years of sporadic criminal conduct, made criminal history category VI--the highest level--inadequate. He could also properly take into account the violent nature of the crime underlying Colon's recent state court conviction. On remand, the district court can reconsider these factors with regard to the totality of Colon's sentence at that time.
 
 
 32
 B. Quantities of Drugs Neither Seized Nor Charged
 
 
 33
 The government requested a discretionary upward departure in the instant case based on quantities of narcotics traded by Colon that were neither seized nor charged in the indictment. It is clear that the government viewed these quantities as having been sold in the course of the same scheme or plan involved in the various counts to which Colon pleaded guilty. Subsequent to Colon's sentencing, the government has in other cases, see United States v. Schaper, 903 F.2d 891, 897-98 (2d Cir.1990), taken the position that such quantities must be mandatorily factored into the base offense level. We have agreed. Id.
 
 
 34
 Briefly stated, quantities of drugs trafficked in by Colon as part of the heroin distribution scheme for which he was convicted must be incorporated into the base offense level calculation.[3] The Background Commentary to Section 1B1.3 provides that "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." U.S.S.G. Sec. 1B1.3 at comment (background) (Jan. 15, 1988). Furthermore, Application Note 2 to U.S.S.G. Sec. 2D1.4, governing attempts and conspiracies, requires that "[w]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance" (emphasis added).[4]
 
 
 35
 Although the government had requested a discretionary upward departure, Judge Walker went on to estimate the uncharged, unseized quantities sold by Colon based on his admitted regular sales[5]--precisely the approximation required by the Commentary to Section 2D1.4. Judge Walker's calculations in support of departure produced a hypothetical sentencing range of 168 to 210 months. Because the 180 months actually imposed falls squarely within that range, treating the uncharged heroin sales as a ground for base offense level enhancement rather than a discretionary upward departure may have no practical impact on the ultimate sentence. However, we believe a remand is required.
 
 
 36
 First, the role of defense counsel facing an enhancement of the base offense level based on additional quantities of narcotics differs from that role where a discretionary upward departure is proposed. In the case of a base offense level determination, the sentencing court's particularized estimate of additional quantities of narcotics has a precise impact on the range of possible imprisonment, whereas in the case of a discretionary departure, the finding as to additional quantities has only a generalized impact. The need to challenge the precision of the quantity finding is thus much greater in the former case than in the latter.
 
 
 37
 In the instant matter, counsel was not alerted by the government's request for an upward departure to the importance of the precise determination of other quantities of narcotics sold by Colon. We believe, therefore, that a remand is necessary for the sentencing court to determine whether alleged conduct involving additional amounts of heroin is demonstrated by a preponderance of the evidence. See Schaper, 903 F.2d at 898; United States v. Shoulberg, 895 F.2d 882 (2d Cir.1990). We also note that Colon complains on appeal that Judge Walker's use of a two-year time figure in making his calculations is not supported by the record. We do not pause to consider this claim because, on remand, the sentencing court can make findings on the record regarding the time-span and invite argument from counsel as to the evidence underlying it.
 
 
 38
 Second, as discussed above, there are two bases for a discretionary upward departure that may be synthesized with the new treatment of the uncharged heroin sales. The court may reassess these grounds, in the light of a significantly adjusted base offense level, to determine whether and to what magnitude they justify departure.
 
 C. The Probation Interview
 
 39
 A final issue raised by Colon merits attention. He asserts that because he was not informed by the probation officer of his right to remain silent and was questioned without counsel being present, his statements in the presentence interview should have been suppressed. He relies principally upon Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), in which the Supreme Court held that the admission of a psychiatrist's testimony at the penalty phase of a murder trial, based upon custodial interviews without counsel before trial, violated the defendant's rights under the Fifth and Sixth Amendments.
 
 
 40
 Under the prior sentencing regime, the presentence interview may not have been a "critical stage" of criminal proceedings necessitating the participation of counsel. See United States v. Wade, 388 U.S. 218, 224-25, 87 S.Ct. 1926, 1930-31, 18 L.Ed.2d 1149 (1967); Baumann v. United States, 692 F.2d 565, 578 (9th Cir.1982). Arguably, the Guidelines have significantly altered the sentencing process in relevant ways. But see United States v. Jackson, 886 F.2d 838 (7th Cir.1989) (rejecting Sixth Amendment challenge to statements made to probation officer preparing Guidelines presentence report). An admission to a probation officer of related past crimes can lead to a drastically increased sentence that is beyond the discretion of the sentencing court to reduce in any substantial fashion. A district court may thus not elect to forego the computation of the base offense level, see Schaper, 903 F.2d at 895-96, and may depart upward or downward from the computed range only for certain reasons.
 
 
 41
 It may be argued that the function of probation officers has also been significantly altered by the Guidelines. Although these officers continue to serve as "neutral information gatherer[s] for the sentencing judge," Jackson, 886 F.2d at 844, the information they gather may well force the sentencing court's hand under the Guidelines. One general purpose of the new sentencing regime, after all, is to work a reduction in the discretion of individual judges in the interest of uniformity. Moreover, whereas cooperation in the pre-Guidelines regime might be taken as evidence of remorse and rehabilitation, the Guidelines provide a two-point reduction for admission of responsibility that may be dwarfed by the upgrade resulting from admissions to the probation officer.
 
 
 42
 Nevertheless, we believe that Colon has waived this argument. Counsel was surely aware that Colon had to be interviewed before sentencing, and counsel made no objection. He was also aware at sentencing of the damaging admissions made by Colon in the interview and still raised no objection. Even if we assume that it was error for the court to receive the statements, the error was not "so 'plain' that the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it." United States v. Frady, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982). Moreover, almost two years have passed since Colon's arrest and a reconstruction of his narcotics trading activities based on other sources of evidence may be very difficult. Given his admissions and lack of objection at earlier times, any success on his claim now would be a wholly unjustified windfall.
 
 
 43
 Remanded.
 
 
 
 *
 The Honorable Pierre N. Leval, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 As Colon was resentenced May 11, 1989, before the effective date of the 1989 amendments to the Guidelines (November 1, 1989), all references are to the 1987 edition of the Commission's Guidelines Manual, as amended up to May 11, 1989
 
 
 [2]
 The presentence report prepared in August 1988 computed a criminal history category of V, giving a sentencing range of 51 to 63 months. However, it noted as a possible ground for departure Colon's upcoming sentence on assault charges in the New York State Supreme Court, stating that the expected sentence (2 to 4 years) would place him in Category VI. See U.S.S.G. Ch. 5, Part A. Colon did receive that penalty in the state court between Judge Walker's October and May sentences, and the judge accordingly adopted that change of circumstances as a revision of the range, rather than a ground for departure
 
 
 [3]
 The amended sections, in force at the time of Colon's sentencing, are set out below
 Sec. 1B1.2. Applicable Guidelines
 (a) The court shall apply the offense guideline section in Chapter Two (Offense Conduct) most applicable to the offense of conviction. Provided, however, in the case of conviction by a plea of guilty or nolo contendere containing a stipulation that specifically establishes a more serious offense than the offense of conviction, the court shall apply the guideline in such chapter most applicable to the stipulated offense. Similarly, stipulations to additional offenses are treated as if the defendant had been convicted of separate counts charging those offenses.
 (b) After determining the appropriate offense guideline section pursuant to subsection (a) of this section, determine the applicable guideline range in accordance with Sec. 1B1.3 (Relevant Conduct).
 Sec. 1B1.3. Relevant Conduct (Factors that Determine the Guideline Range)
 The conduct that is relevant to determining the applicable guideline range includes that set forth below.
 (a) Chapters Two (Offense Conduct) and Three (Adjustments). Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
 (1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense;
 (2) solely with respect to offenses of a character for which Sec. 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction;
 (3) all harm or risk of harm that resulted from the acts or omissions specified in subsections (a)(1) and (a)(2) above, if the harm or risk was caused intentionally, recklessly or by criminal negligence, and all harm or risk that was the object of such acts or omissions;
 (4) the defendant's state of mind, intent, motive and purpose in committing the offense; and
 (5) any other information specified in the applicable guideline.
 (b) Chapter Four (Criminal History and Criminal Livelihood). To determine the criminal history category and the applicability of the career offender and criminal livelihood guidelines, the court shall consider all conduct relevant to a determination of the factors enumerated in the respective guidelines in Chapter Four.
 
 
 [4]
 This directive also applies to non-conspiracy narcotics crimes. See U.S.S.G. Sec. 2D1.1 comment (n.11) (Jan. 15, 1988) ("If the amount seized does not reflect the scale of the offense, see Application Note 2 of the Commentary to Sec. 2D1.4.")
 
 
 [5]
 Judge Walker's remark that Colon "has been engaged in the organized sale of heroin for at least two years" and his finding that Colon controlled and directed the organization in question indicate that Judge Walker believed that the additional quantities sold by Colon were part of the same course of conduct for which he was convicted. We need not, therefore, address the question of the treatment of additional sales of narcotics that are not part of the same course of conduct or common scheme