**UNITED STATES of America, Appellee,**

v.

**Paul V. BAUERS, Defendant–Appellant.**

**No. 233, Docket 94–1112.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 4, 1994.

Decided Feb. 9, 1995.

Mark P. Goodman, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., S.D.N.Y., Guy Petrillo, Asst. U.S. Atty., of counsel), for appellee.

David A. Lewis, Legal Aid Soc., Federal Defenders Service Unit, New York City, for defendant-appellant.

Before: CARDAMONE, PIERCE and MINER, Circuit Judges.

MINER, Circuit Judge:

Defendant-appellant Paul V. Bauers appeals from a judgment of conviction and sentence entered on January 31, 1994 in the United States District Court for the Southern District of New York (Sotomayor, *J.*) following a plea of guilty to one count of mail fraud, in violation of 18 U.S.C. § 1341. The district court upwardly departed from the Sentencing Guidelines by increasing defendant's criminal history category one level on the ground that the consolidation of defendant's two state felony convictions and the likelihood of his recidivism were not adequately represented in his original criminal history category. Accordingly, the court sentenced Bauers to thirty-three months in prison, to be followed by a five-year term of supervised release, and a $50 special assessment. Plaintiff challenges the upward departure as well as the five-year term of supervised release.

We affirm the district court's upward departure but remand for resentencing with regard to defendant's term of supervised release.

## I.

On January 7, 1993, Bauers walked into the Rockville, Maryland branch of Metropolitan Life Insurance Company and, under the name of David Finley, applied for a $52,000 loan to be issued against Finley's life insurance policy. Approximately two weeks later, Bauers picked up a check representing the proceeds of the loan. When he attempted to use the check to open an investor's account in the name of David Finley with the Rockville, Maryland branch of Merrill Lynch, an investigator with the company contacted Metropolitan Life to verify the authenticity of the check and the personal information provided by Bauers. Metropolitan then contacted Finley, who stated that he had not taken a loan against his insurance policy and identified Bauers as the Metropolitan Life sales person from whom he had purchased the policy.

In February 1993, Merrill Lynch received a letter from "David L. Finley" requesting that $40,000 from his new account be transferred to an account bearing the name "Bauers Ent. & Associates" at Manufacturers Hanover Trust Company in New York City. Two days later, Merrill Lynch received a phone call from a man claiming to be Finley and inquiring about his wire transfer. When the caller was told that the wire-transfer number he had provided was not correct, he requested that the $40,000 be mailed to 208 East 51st Street, Suite 269, New York, NY. Postal inspectors subsequently learned that this was the address of Mail Boxes, Etc., a company that rents out private mailboxes, and that Suite 269 was actually Box 269, which had been rented by Bauers.

Bauers subsequently was arrested and charged with one count of mail fraud, in violation of 18 U.S.C. § 1341. He pleaded guilty on June 15, 1993. On January 31, 1994, the district court conducted a sentenc-

ing hearing at which the court informed Bauers that it was contemplating an upward departure of one level in assessing Bauers' criminal history category, pursuant to U.S.S.G. § 4A1.3. Bauers' Presentence Report ("PSR") included a recommendation for an upward departure, noting that, if the two state convictions had not been consolidated for sentencing, three additional criminal history points would have been added. The three extra points would have resulted in a criminal history category of V. The district court provided Bauers with an opportunity to have the hearing adjourned to give him time to prepare and submit a response. Bauers declined the opportunity, opting to address the court immediately.

The two state felony convictions at issue occurred in Michigan and involved the misappropriation of customers' funds while Bauers was an insurance agent and investment advisor and broker. In the first felony conviction, Bauers was arrested in May of 1991 and charged with larceny by conversion. In that case, Bauers agreed to sell certain customers a single-premium annuity policy for $50,000. Rather than obtaining the policy for his customers, however, Bauers issued them fraudulent policies and kept the premiums for himself.

In the second felony conviction, Bauers was arrested on July 31, 1991 and charged with theft by false pretenses. In that case, Bauers misappropriated funds that were entrusted to him by numerous customers seeking to purchase insurance policies and other investments. One customer provided Bauers with over $200,000 to invest in income trust funds, life insurance annuity policies, and stocks and bonds. Bauers again issued fraudulent policies, misappropriated the funds, and failed to make certain investments as represented. He also forged his name as a co-payee and cashed certain checks for his own use. The PSR indicated that from 1989 to 1991, Bauers had defrauded more than 100 customers, although Bauers maintains that he had defrauded only twelve.

On December 31, 1991, Bauers pleaded guilty to the two state crimes, each of which was assigned a separate docket number. The cases then were consolidated for sentencing. The Michigan court sentenced Bauers to one-to-five years in prison on the first charge and four-to-ten years in prison on the second charge, the sentences to run concurrently.

After his plea of guilty in the district court, the Probation Department assigned Bauers a total of seven criminal history points calculated as follows: (1) one point for a previous driving while intoxicated conviction; (2) two points under section 4A1.1(d), because the present offense was committed while Bauers was on parole; (3) one point pursuant to section 4A1.1(e), because the offense was committed less than two years after Bauers was released from prison on his two 1991 state convictions; and (4) three points for the two felony convictions described above, because the state court had consolidated the two convictions for sentencing and they therefore were treated as one conviction under section 4A1.2(a)(2). The seven criminal history points resulted in a criminal history category of IV. Based on his offense level of twelve and a criminal history category of IV, Bauers' guidelines range was twenty-one to twenty-seven months.

After considering counsel's arguments, the district court found that Bauers' criminal history under the Sentencing Guidelines did not adequately reflect the seriousness of Bauers' actual criminal history because the two state felony convictions, although consolidated for sentencing, were based on separate crimes with separate victims. The court also concluded that the criminal history category did not adequately reflect the likelihood that Bauers would commit future crimes. Accordingly, the court departed upward one criminal history category, resulting in a criminal history category of V. With his adjusted offense level of twelve and a criminal history category of V, Bauers' sentencing range increased to twenty-seven to thirty-three months in prison. The court then imposed the maximum thirty-three month prison term, to be followed by a five-year term of supervised release, and a $50 special assessment. This appeal followed.

## II.

Bauers contends that the district court lacked the authority to depart upward be-

cause the Sentencing Commission has adequately considered situations in which two separate crimes are consolidated for sentencing and in which crimes have been committed during a period of probation. We disagree with the contention.

A sentencing court may depart from the Guidelines if "the court finds that there exists an aggravating or mitigating circumstance of kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). "We review *de novo* a district judge's legal conclusion that a given circumstance warrants departure." *United States v. Malik,* 16 F.3d 45, 52 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 435, 130 L.Ed.2d 347 (1994). However, once it has been established that certain circumstances may warrant a departure, the district court has "wide discretion" in determining whether to depart. *See United States v. Colon,* 905 F.2d 580, 584 (2d Cir.1990).

■ In determining a defendant's criminal history category, prior sentences imposed for "related cases" are to be treated as one sentence. U.S.S.G. § 4A1.2(a)(2). Related cases are defined as offenses that "(1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing." *Id.* § 4A1.2, comment. (n. 3). The Sentencing Commission, however, recognized that "there may be instances in which [the definition of related cases] is overly broad and will result in a criminal history score that underrepresents the seriousness of the defendant's criminal history." *Id.; see United States v. Panadero,* 7 F.3d 691, 697 (7th Cir.1993). Accordingly, section 4A1.3 expressly authorizes upward departures "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." Therefore, a defendant's past criminal record and background clearly are factors that a sentencing court may rely on in determining whether an upward departure is warranted. Once we conclude that the factors relied upon by the sentencing court

were proper, we review the court's upward departure for abuse of discretion. *See Colon,* 905 F.2d at 584.

■ Here, the district court stated that "[o]utside of the isolated peccadillos of the Michigan system[ ] that decided to consolidate sentencing, the [two felony convictions] were separate, done over separate periods of time, and combining them as the guidelines suggest, misrepresents their seriousness." The court also stated that the likelihood of recidivism in this case was "extraordinarily high." These are factors properly taken into account in the sentencing calculus. Given that Bauers' two state convictions were distinct crimes that were likely consolidated merely for the expediency of the state criminal justice system, and that Bauers' record reflects an individual bent on defrauding the public, we cannot say that the court's upward departure was an abuse of discretion. *See United States v. Bishop,* 921 F.2d 1068, 1071 (10th Cir.1990), *cert. denied,* 500 U.S. 925, 111 S.Ct. 2034, 114 L.Ed.2d 119 (1991).

■ Bauers further argues that his two state convictions were part of the same scheme to defraud investors, and as such, should have been considered "related crimes," pursuant to section 4A1.2. In so arguing, however, Bauers misconstrues the meaning of "single common scheme or plan" as provided in section 4A1.2. "[F]or crimes to be deemed related there must exist 'a close factual relationship between the underlying convictions.'" *United States v. Rappaport,* 999 F.2d 57, 60 (2d Cir.1993) (quoting *United States v. Lopez,* 961 F.2d 384, 387 (2d Cir.1992)). Accordingly, when the previous crimes involve separate victims and different locations, even when the actual crimes charged are similar, there is no "single common scheme or plan." *See id.* Here, although Bauers' consistently sought to defraud his victims, his crimes involved different victims and separate acts that cannot be considered part of a "single common scheme" for purposes of determining his criminal history category.

Bauers also contends that the district court improperly double counted because, in departing upward, it relied on the fact that he committed the present offense while on probation for the two state convictions. The

court, however, did not rely on the fact that Bauers was on probation. Rather, it found that there was an "extraordinarily high" likelihood that Bauers would commit future crimes because of his undaunted efforts to defraud customers even after having been convicted of two state felonies and sent to prison.

Lastly, Bauers contends that the five-year term of supervised release was improper under 18 U.S.C. §§ 3559 and 3583. The maximum term of imprisonment for a mail fraud conviction under 18 U.S.C. § 1341 is five years, where, as here, the violation does not affect a "financial institution" as that term is defined under 18 U.S.C. § 20. A violation carrying a maximum prison term of five years carries a maximum term of supervised release of three years. 18 U.S.C. §§ 3559(a)(4) and 3583(b)(2). Accordingly, the supervised release term was excessive and we must remand this case for resentencing for that reason only.

## III.

For the foregoing reasons, we affirm the district court's imposition of a thirty-three month prison term, vacate the five-year term of supervised release, and remand for resentencing with respect to defendant's term of supervised release.