**UNITED STATES of America**

v.

**Jeffrey SHORE, Defendant.**

**No. CV 95–0181.**

United States District Court,
E.D. New York.

Oct. 21, 1995.

386

Jeffrey Shore, Atlanta, GA, Petitioner Pro Se.

Zachary W. Carter, United States Attorney, Eastern District of New York by Debra D. Newman, Assistant United States Attorney, Garden City, NY, for Respondent.

### *ORDER*

SPATT, District Judge.

The petitioner *pro se* Jeffrey Shore ("Shore") moves the Court for an order vacating or setting aside his sentence pursuant to 28 U.S.C. § 2255. Shore advances the following three arguments in support of his motion: (1) the Court abused its discretion by upwardly departing from the sentencing

guideline range; (2) the Court's upward departure was a denial of Shore's right to equal protection; and (3) the Court's upward departure was improper because it was based on a foreign conviction that Shore alleges was constitutionally infirm.

On May 22, 1992 Shore pleaded guilty to one count of causing stolen goods to be transported interstate in violation of 18 U.S.C. § 2314. Based on the presentence report and the evidence presented at three presentence hearings, Shore's offense level was calculated at twelve. According to the presentence report, Shore had a criminal history category of III. An offense level of twelve and a criminal history category of III placed Shore within a sentencing range of 15 to 21 months. The Court found, after the three presentence hearings, that the criminal history category of III did not adequately reflect Shore's past criminal conduct or the likelihood that he would commit other crimes. Accordingly, the Court exercised its discretion, pursuant to § 4A1.3, to move horizontally to the next criminal history category, category IV. With an offense level of twelve and a criminal history category of VI, Shore's guidelines range was twenty-one to twenty-seven months.

Shore was sentenced by this Court on December 29, 1992 to a twenty-seven month term of incarceration to be followed by a period of three years supervised release and a fine of $30,000.00 to paid on an installment basis over a period of five years following his release from incarceration. The Court also ordered Shore to participate in psychiatric counselling as a special condition of both incarceration and supervised release.

**The presentence hearings**

Three hearings were held by the Court prior to imposition of Shore's sentence. On November 20, 1992, the Court heard argument on whether Federal Sentencing Guideline § 4A1.3, which permits an upward departure where the sentence does not adequately reflect the seriousness of a defendant's past criminal history or the likelihood that the defendant would commit other crimes, would permit the Court to consider two offenses by Shore that occurred more than twenty years earlier. The Court initial-

ly declined to depart upwardly based on those offenses because a disorderly conduct was relatively minor and the other, a foreign conviction, involved only 6,000 grams of marijuana, an amount that would support only a misdemeanor conviction in New York. Transcript of November 20, 1992 Hearing at p. 35–36. At the end of the hearing the Court stated that "I have not abandoned the application for an upward departure because I consider the 21 months top charge ludicrous for this man's history and what he has done while he has been before me." *Id.* at p. 47.

The second pre-sentence hearing took place on December 11, 1992. At that hearing the Court noted the Second Circuit's decision in *United States v. Diaz–Collado,* which was rendered several days earlier on December 7, 1992. *See United States v. Diaz–Collado,* 981 F.2d 640 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2934, 124 L.Ed.2d 684 (1993). In that opinion the Second Circuit stated that a judge's decision to increase a federal defendant's sentence because of crimes committed before the fifteen year period is permissible if avoiding a sentence enhancement would lead to a distorted image of the defendant's criminal past. *See id.* The Court advised the parties that it had erred with respect to the view expressed at the November 20, 1992 hearing that nonsimilar outdated convictions could not support an upward departure. Transcript of December 11, 1992 Hearing at pp. 18–21. The hearing was adjourned for the Court to consider, among other things, whether Shore's 1969 Lebanese conviction was a factor to be considered in determining whether an upward departure was justified on the grounds that the defendant's history was not fully considered and his capacity or the possibility of committing other crimes was not fully considered. *Id.* at 26. The Court did not consider Shore's 1971 disorderly conduct conviction to be a proper factor in determining whether an upward departure was appropriate. *Id.*

On December 29, 1992, the Court held the final hearing prior to imposing sentence. With regard to Shore's 1971 Lebanese conviction, the Court stated that

[w]ith respect now to the criminal history, as I have stated about four times, the

Court does find that the government has established by a preponderance of the evidence that there was an old or outdated conviction that was not sufficiently taken into consideration in the sentencing guidelines criminal history.

In the case of United States against Diaz–Collado, decided by the Second Circuit approximately two weeks ago on December 7, 1992, slip opinion at page 302, Section 4A1.2(e)(1) provides that quote, any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted, end quote. In Diaz–Collado the Court of Appeals quoted that departure on the basis of, quote, similarly outdated convictions is specifically authorized by the guidelines in comment note 8.

The Court noted that even if the conviction is not a similar one it could be considered in an upward departure. Quote, for the purposes of this appeal we assume that under certain circumstances non-similar outdated convictions may be used as a basis for departing from the guidelines, end quote.

And Judge Feinberg wrote, that, quote, this case illustrates how ignoring non-similar out-dated convictions can sometimes generate a distorted image of a defendant's criminal past, end quote.

It is clear then that this Court has the power to upwardly depart because of an old, more than 15 year old crime.

. . . .

We are told in United States against Kim, 896 F.2d 678, Second Circuit 1990 that when a criminal history category is deemed inadequate, and a judge is contemplating a 4A departure, by moving horizontally across the sentencing table to a more serious category, the Judge must next consider the next higher category to determine if it would be adequately reflect the seriousness of the defendant's criminal history.

The Court finds the government has established that there exists an aggravating circumstances [sic] of a kind or to a degree not adequately taken into consideration by the sentencing commission in formulating the guidelines.

In respect to a July 30th, 1969 smuggling narcotics conviction in Beirut, Lebanon, in which the defendant was sentenced to three years hard labor followed by deported [sic] on February 13, 1970. According to Interpol, the defendant was arrested in Lebanon for attempting to smuggle 6,000 grams of hashish outside the country.

Looking at the sentencing table, the history, the criminal history category of three, with the offense level of 12, results in 15 to 21 months.

Moving along laterally into the criminal history we get to roman numeral four, four point seven, eight and nine, which leads to 21 to 27 months. And the Court is departing to get into Roman numeral four.

Transcript of December 29, 1992 Hearing at pp. 110–113. The Court proceeded to impose a sentence of 27 months incarceration.

## Standard for a horizontal departure

 Shore first argues that the Court abused its discretion by considering what Shore characterizes as an "outdated, stale, non-similar, foreign conviction."

Section A41.3 of the Sentencing Guidelines provides that

[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range. Such information may include, but is not limited to information concerning

(a) prior sentence(s) not used in computing the criminal history category (*e.g.* sentences for foreign and tribal offenses);

(b) prior sentence(s) of substantially more than one year imposed as a result of independent crimes committed on different occasions;

(c) prior similar misconduct established by a civil adjudication or by a failure to comply with an administrative order;

(d) whether the defendant was pending trial or sentencing on another charge at the time of the instant offense;

(e) prior similar adult criminal conduct not resulting in a criminal conviction.

A departure under this provision is warranted when the criminal history category significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes.

The Second Circuit has articulated the factors that are to guide a district court in considering whether a higher criminal history category may be applied pursuant to Section 4A1.3,

> In upwardly departing under this section, "the guidelines require a judge to 1) determine which category best encompasses the defendant's prior history, and 2) use the corresponding sentencing range for that category 'to guide its departure.'" *United States v. Cervantes,* 878 F.2d 50, 53 (2d Cir.1989) (quoting U.S.S.G. § 4A1.3 at 4.9). *See also United States v. Coe,* 891 F.2d 405, 412 (2d Cir.1989). In considering which category to apply, the sentencing judge must "proceed sequentially through the categories, considering whether the next higher category adequately reflects[s] the seriousness of defendants record." *Id.* at 412; *see Cervantes,* 878 F.2d at 54–55; U.S.S.G. § 4A1.3 at 4.9.

*United States v. Nichols,* 912 F.2d 598, 604 (2d Cir.1990). In addition the sentencing court must articulate its grounds for the departure and provide the defendant's counsel with notice and opportunity to be heard on the matter. *Id.*

■ In the Court's view the correct procedure was followed in determining Shore's sentence. The Court proceeded from category III to the next criminal history category, determined that category VI adequately reflected the seriousness of Shore's record and imposed a sentence within the guideline range for Shore's offense level with a category of IV. The Court gave the defendant notice at the December 11, 1992 presentenc-

ing hearing that it was considering a departure, based on the Second Circuit's decision in *U.S. v. Diaz–Collado,* 981 F.2d 640 (2d Cir.1992), which was decided on December 7, 1992. Transcript of December 11, 1992 Hearing at 18–20, 41. At the next hearing, on December 29, 1992, the Court gave the defendant an opportunity to be heard on the matter. The Court also set forth the reasons supporting its decision to move laterally into criminal history category VI, namely that category III did not adequately account for Shore's past criminal conduct, which included a 1969 narcotics conviction with a sentence of three years hard labor or the likelihood of recidivism by Shore, who the Court characterized as "an incorrigible swindler."

■ Shore argues that the Court abused its discretion in departing under § 4A1.3 based on the *Diaz–Collado.* According to Shore he did not have an adequate opportunity to argue his case in light of the *Diaz–Collado* decision, because the decision was rendered only days prior to the second presentencing hearing and he lacked information on the details of the case. This argument is without merit. Shore was represented by counsel at the time of the sentencing hearings, and the Court gave the defendant eighteen days notice before the next sentencing hearing of its intention to consider a departure from the guidelines. The full text of the decision was available for the parties' review prior to the December 29, 1992 hearing.

Shore also argues that the criminal history of the defendant in *Diaz–Collado* differed from his own, so that it was inappropriate for this Court to rely on that decision in upwardly departing. In *Diaz–Collado* the presentence report assigned no criminal history points to five convictions because each was outdated under § 4A1.2(e)(1)–(2), and therefore excluded from the criminal history category calculation under § 4A1.2(e)(3). "Of the five outdated convictions, four involved automobile thefts committed over the course of one year, and the other was a criminal mischief conviction imposed a few years earlier." *Diaz–Collado,* 981 F.2d at 641–2. Remarking on these and several outstanding warrants pending against Diaz–Collado at

the time of his sentencing, the court stated that the criminal history category of four did not adequately reflect the seriousness of the defendant's conduct or the likelihood that he would continue to commit crimes. *Id.* at 643. The Second Circuit commented that this case "illustrates how ignoring nonsimilar outdated convictions can sometimes generate a distorted image of a defendant's criminal past." *Id.* at 644. The Second Circuit found that the district court's consideration of the totality of the defendant's criminal conduct, which was partially revealed by the outdated convictions, was not unjustified. *Id.*

Consistent with the reasoning of *Diaz–Collado,* this Court viewed the 1969 Lebanese conviction as relevant to assessing the totality of Shore's criminal conduct, which revealed a long time disrespect for the law. The presentence report reveals that in 1979 Shore was convicted of interstate transportation of stolen goods for which Shore was sentenced to three years incarceration. Execution of that sentence was suspended and Shore was required to serve three months on weekends followed by thirty-three months probation and a $5,000.00 fine. The presentence report relates Shore's admitted involvement in an armed robbery in connection with this offense and that Shore violated the conditions of supervised release that were imposed as part of his sentence. The presentence report also indicates that Shore was arrested in England in 1978 for attempting to sell stolen property and returned to the United States using a false passport while released on bail for that alleged offense. In 1990 Shore was convicted for conspiracy to commit wire fraud and sentenced to two years probation, which was extended for two more years in March of 1991. This offense involved an attempt to fraudulently wire transfer twelve million dollars from a brokerage house to Shore's checking account. Shore was reprimanded for not complying with the conditions of probation and it is also reported that he made false statements to the probation department regarding his activities. While on probation for the wire transfer offense, Shore committed the acts for which he was indicted in the present case.

Shore alleges that the Court erred in referring to the Lebanese sentence as a three year period of incarceration, because he states that he succeeded on appeal and actually served only ten months. Shore cites § A41.2, the 1992 version of which states that the term "sentence of imprisonment" refers to the maximum sentence imposed and that if part of a sentence of imprisonment was suspended, the term refers only to the portion that was not suspended. The Court notes that application note 2 to this section states that criminal history points are based on the sentence that is pronounced, not on the sentence that is actually served. However, even if a sentence that was reduced to ten months on appeal could not be considered in calculating the defendant's criminal history points, it is the Court's view that the purpose of § 4A1.3 is to address any distortion that results when past conduct is not part of the criminal history calculation under the guidelines. Furthermore, another basis supporting the Court's consideration of Shore's 1969 conviction can be found in § 4A1.2, Application Note 6, which states that the criminal conduct underlying any conviction that is not counted in the criminal history score may be considered pursuant to Section 4A1.3. The fact that Shore's conviction was not similar to the offense for which Shore is now incarcerated, and the fact that the Lebanese conviction is outdated did not preclude the Court from factoring that event into its determination of whether the criminal history category of III adequately reflected the seriousness of his past conduct or the likelihood that he would commit other crimes. *See Diaz–Collado,* 981 F.2d 640.

Shore's arguments opposing the Court's departure pursuant to § 4A1.3 focus solely on the Court's consideration of the 1969 Lebanese conviction. It was noted at the time of sentencing and is here reiterated that Shore's potential for recidivism also persuaded the Court that a criminal history category of IV would more appropriately provide for Shore's past record of disrespect for the law and the likelihood that his attitude and conduct would repeat.

The Court has reviewed the presentence report, the record of the hearings that were

held in connection with Shore's sentencing, the submissions of Shore and the government as set forth in papers in support of and in opposition to this petition. Based on section 4A1.3 of the sentencing guidelines and the relevant case law, it is the Court's view that it had the discretion to depart laterally to criminal history category IV and that it followed the proper procedure for doing so. Accordingly, the Court declines to vacate or set aside Shore's sentence on the basis that it was imposed as a result of abuse of the Court's discretion.

**Equal Protection**

■ Shore next argues that the Court's departure under § 4A1.3 violated his Fourteenth Amendment rights to equal protection under the law. Shore cites cases from other circuits for the proposition that non-similar outdated convictions support a departure under § 4A1.3 only if they are distinguished by their numerosity and dangerousness. *See e.g., United States v. Aymelek,* 926 F.2d 64 (1st Cir.1991); *United States v. Rusher,* 966 F.2d 868 (4th Cir.1992); *United States v. Goff,* 907 F.2d 1441 (4th Cir.1990). While Shore's analysis of these cases is accurate, he cites to no Second Circuit cases that similarly restrict the sentencing court's discretion under § 4A1.3. The Second Circuit has commented on the unresolved split of authority among the circuits as to the application of departures under that section. *See Diaz–Collado,* 981 F.2d at 643 ("The circuits are split on the availability of nonsimilar outdated convictions as a basis for departures from the Guidelines.").

■ The fact that other courts have exercised their discretion under § 4A1.3 in a manner different from this Court does not mean that Shore has been deprived of equal protection under the law. In fact the Second Circuit has commented that "once it has been established that certain circumstances may warrant a departure, the district court has "wide discretion" in determining whether to depart." *United States v. Bauers,* 47 F.3d 535, 538 (2d Cir.1995) (citing *United States v. Colon,* 905 F.2d 580, 584 (2d Cir.1990)).

■ Shore also argues that by imposing the maximum sentence under category IV, namely, 27 months, the Court treated Shore differently than other defendants who had more extensive outdated criminal activity. *See e.g., Diaz–Collado,* 981 F.2d at 644 ("Moreover, the district court's departure had the effect of increasing Diaz–Collado's sentence from 33 to 37 months. We do not find this four-month increase 'unreasonable' "). This argument is unsupported, as it is a matter of the Court's discretion to impose a sentence within the guideline range for the defendant's criminal history category. *See e.g., Bauers,* 47 F.3d at 539 (affirming district court's departure from category IV, where the sentencing range was twenty-one to twenty-seven months to category VI, where the sentencing range was twenty seven months to thirty-three months, and also affirming the district court's imposition of a sentence of thirty-three months). Having determined that the total picture of Shore's conduct was adequately addressed by a criminal history category of IV, this Court sentenced Shore to twenty-seven months incarceration, a sentence that is within the guideline range of twenty-one to twenty-seven months for an offense level of twelve. Imposition of a sentence that is the maximum within the guideline range does not deprive a defendant of equal protection under the laws simply because other courts have sentenced other defendants to terms of imprisonment that are less than the maximum allowable within the guideline range. Departures are measured by a standard of reasonableness in light of the circumstances of the case. *See United States v. Thomas,* 6 F.3d 960, 967 (2d Cir.1993) (citing *Williams v. United States,* 503 U.S. 193, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992)).

**The Alleged invalidity of Shore's Lebanese conviction**

Shore's final argument is that the Court erred in considered his 1969 Lebanese conviction because it was constitutionally invalid and factually not reliable evidence of past criminal activity that would support an upward departure. The Court notes that Shore did not argue that this conviction was constitutionally infirm at any time prior to this petition.

However, Shore now contends that because he has raised a question as to the constitutional validity of the foreign conviction, an evidentiary hearing should be conducted so that the Court may exercise informed discretion with regard to upward departure. *See United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). In *Tucker*, the Supreme Court upheld the Court of Appeals decision remanding a case for reconsideration by the district court of a sentence that had been imposed with explicit consideration of two prior convictions that were later conclusively determined to be constitutionally invalid. Shore argues that constitutional invalidity should be determined as follows: "[t]he testimony of the defendant, as well as others, might be taken at evidentiary hearing.... Alternatively, given the passage of time or the nature of the state court records, inferential evidence may be necessary to present the constitutional issues...." *United States v. Newman*, 912 F.2d 1119, 1122 (9th Cir.1990) (citations omitted).

Annexed to the petition is Shore's own affidavit regarding the events in 1969 in Lebanon, in which he admits possessing and using hashish. The affidavit also states that Shore's Fourth Amendments rights and his rights to a speedy arraignment and representation by counsel were violated by Lebanese officials. Shore contends that the testimony he would give regarding the events surrounding his arrest and conviction, as well as the fact that he has no other drug related convictions, would support an inference that the Lebanese conviction was constitutionally invalid.

■ The commentary to Section 4A1.2 addresses the use of invalid convictions, stating that "sentences resulting from convictions that a defendant shows to have been previously ruled constitutionally invalid are not to be counted. Nonetheless, the criminal conduct underlying *any* conviction that is not counted in the criminal history score *may be considered pursuant to § 4A1.3*." Commentary to § 4A1.2 n. 6 (1992 Guidelines Manual) (emphasis supplied). In *United States v. Soliman*, 889 F.2d 441 (2d Cir.1989), where a defendant challenged the district court's upward departure under § 4A1.3 based on a foreign offense, the Second Circuit commented on the precise issue that is raised here by Shore as follows:

[The defendant] nevertheless, argues that the Supreme Court's decision in *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), prohibits reliance by a trial judge on a constitutionally defective conviction in sentencing a defendant. In *Tucker*, the Supreme Court concluded that a defendant must be resentenced when the judge was unaware of the constitutional defects in a prior conviction relied upon in sentencing. The Supreme Court reasoned that the "case might have been different if the sentencing judge *had known* that at least two of the respondent's previous convictions had been unconstitutionally obtained." *Id.* at 448, 92 S.Ct. at 592 (emphasis supplied [by the Second Circuit]).

*Tucker* required informed discretion on the part of the sentencing court. *See e.g., United States v. Fleishman*, 684 F.2d 1329, 1346 (9th Cir., *cert. denied*, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982)) (upholding sentence where "[t]he district court was ... under no mistaken impression that the convictions were constitutionally valid under this country's laws as was the sentencing court in *Tucker*"). Once apprised of the possible constitutional infirmities surrounding a foreign conviction, the sentencing judge, in an exercise of informed discretion, may rely on the conviction in deciding whether the depart from a Guidelines range, or increase a sentence within a range. *See Guidelines Manual,* § 1B1.4 at 1.21 ("In determining the sentence to impose within the guidelines range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law. *See 18 U.S.C.* § 3661.")

To interpret *Tucker* otherwise would lead to the bizarre result that the facts underlying a crime could be considered only when they did not result in a conviction. Subsection (e) of the Guidelines

§ 4A1.3, as we have indicated, explicitly allows for consideration of prior misdeeds that were not the subject of a conviction. The settled law of this Circuit provides the same broad discretion. *See e.g., United States v. Carmona*, 873 F.2d 569, 574 (2d Cir.1989) ("any information or circumstances shedding light on the defendant's background, history and behavior may properly be factored into the sentencing determination.")

*United States v. Soliman*, 889 F.2d 441 (2d Cir.1989).

■ The Court has reviewed Shore's allegations with regard to the constitutional infirmity of his Lebanese conviction and sentencing. The Court also takes into consideration the fact that Shore does not dispute that he possessed and used the illegal substance at the time of his arrest and conviction for the narcotics offense. The Court declines to vacate or set aside Shore's sentence based on the information presented and does not see the need to conduct an evidentiary hearing, which apparently would consist of Shore testifying to the information set forth in his affidavit. Shore's constitutional arguments are otherwise unsupported.

Had the defendant raised the constitutional argument prior to sentencing, and had the Court exercised its discretion with an awareness of possible constitutional infirmities of the Lebanese conviction, the Court's "informed discretion" would have resulted in the same sentence that was imposed. The Court was aware at the time of sentencing that Shore was successful on appeal from that conviction and that his sentence was reduced by the Lebanese appellate court. It is the Court's view that Shore's conduct was properly factored into the Court's determination of Shore's sentence as "information or circumstance shedding light on the defendant's background, history and behavior." *United States v. Carmona*, 873 F.2d 569, 574 (2d Cir.1989). Accordingly, the Court declines to vacate or set aside Shore's sentence on the basis that it was improperly enhanced based on use of a constitutionally invalid conviction.

*CONCLUSION*

For the reasons stated above, the motion by Jeffrey Shore pursuant to 28 U.S.C. § 2255, is denied in its entirety.

The Clerk of the Court is advised that this Order closes the case.

**SO ORDERED.**