UNITED STATES of America, Appellee,

v.

MING HE, also known as Tony Jai, Defendant–Appellant.

No. 544, Docket 95–1331.

United States Court of Appeals, Second Circuit.

Argued Dec. 1, 1995.

Decided Sept. 3, 1996.

Susan R. Necheles, New York City (Goldman & Hafetz, New York, New York, of counsel), for Defendant–Appellant.

Margaret Giordano, Assistant United States Attorney, Brooklyn, New York (Zachary W. Carter, United States Attorney, David C. James, Leslie R. Caldwell, Assistant United States Attorneys, Eastern District of New York, Brooklyn, New York, of counsel), for Appellee.

Before CARDAMONE and CALABRESI, Circuit Judges and NICKERSON,* District Judge.

CARDAMONE, Circuit Judge:

Ming He (defendant or appellant) appeals from a June 8, 1995 judgment filed in the United States District Court for the Eastern District of New York (Raggi, J.) that imposed a five year prison sentence on him. Defendant, who had entered into a cooperation agreement with the government, asserts that, when fixing his sentence, the trial court relied on impermissible factors, derived from his debriefing by the prosecution. Because his counsel was not given advance notice of the debriefing sessions, she was not in attendance. On appeal, Ming He contends the Sixth Amendment entitles him to the assistance of counsel during debriefing and since he did not waive that right, the government was obliged to respect it.

In the Eastern District it is standard practice for a cooperating defendant to be interviewed by the prosecutor without his counsel being present. Since the conduct of a debriefing session ordinarily is neither standardized nor governed by set rules, a cooperating witness may in fact provide much useful assistance but may fail to "come clean" with every piece of information relevant to the investigation or prosecution of other offenders. Such a failure—real or perceived—may cause the prosecutor to decide against requesting a more lenient sentence for defendant or, as here, to disparage defendant's cooperation.

When the power to authorize the sentencing court to make a downward departure—in order to reward a cooperating witness who has rendered substantial assistance—was vested in the prosecutor, a change occurred in the dynamics of sentencing. Formerly, this power was lodged in a neutral judge, but now it resides initially in the hands of the prosecutor, an interested party in a criminal proceeding. Such a change in authority has the potential to tilt this aspect of a criminal prosecution unfairly in favor of the government. This potential for unfair treatment is troubling. Many view a cooperating witness as a betrayer or informer; unquestionably, such a person is not generally held in high regard. But the fairness of our system of criminal justice may best be seen in its treatment of those individuals held in low esteem. To create in the interest of fairness a more level playing field and for those other reasons we set forth in the discussion that follows, we think when a cooperating witness is debriefed he is entitled to the assistance of counsel.

Therefore, while we do not reach or decide appellant's constitutional argument, the government's standard practice in this district of conducting debriefing interviews outside the presence of counsel is inconsistent, in our view, with the fair administration of criminal justice. Consequently, we exercise our supervisory authority to bring it to an end, and vacate the judgment in the instant case and remand for resentencing.

## BACKGROUND

Ming He, also known as "Tony Jai," is a 27–year old permanent United States resident who holds Chinese citizenship. On September 26, 1994 he pled guilty to one count of racketeering, in violation of 18 U.S.C. § 1962. According to the presentence report, the racketeering count was predicated on two racketeering acts, one a conspiracy to extort money from restaurants and other

---

* Hon. Eugene H. Nickerson, Senior United States District Judge for the Eastern District of New York, sitting by designation.

businesses in violation of 18 U.S.C. § 1951, and the other a conspiracy to commit arson in violation of N.Y. Penal Law §§ 150.10 and 105.15. Defendant engaged in these criminal acts as a member of the "Tung On Gang," an illegal criminal enterprise operating primarily in New York City's Chinatown.

Prior to pleading guilty, Ming He had served briefly—after an arrest on gambling charges in December 1993—as an informant for the Bureau of Alcohol, Tobacco and Firearms. When it became evident to the government that his involvement in the Tung On Gang went well beyond the gambling activities he had originally acknowledged, defendant and his counsel entered into extensive negotiations with the government. These negotiations led to defendant's guilty plea.

At the time of entering his plea, defendant also signed a seven page cooperation agreement with the United States Attorney for the Eastern District of New York. His counsel, Susan R. Necheles, Esq., represented him in the negotiations and she and defendant both signed the agreement. In it defendant promised to "provide truthful, complete and accurate information" and to "cooperate fully" with the Eastern District prosecutor. More specifically, he agreed to be debriefed concerning his criminal activities, to give the government any relevant materials in his possession, and to keep the fact of his cooperation confidential. Defendant also waived his right to object to having an indictment filed against him and agreed to have his sentencing adjourned until his cooperation was complete.

In return for these promises, the government promised to file a motion pursuant to U.S.S.G. § 5K1.1 in which it would acknowledge defendant's cooperation and recommend to the sentencing court that it downwardly depart from the range otherwise fixed by the Sentencing Guidelines. The agreement stated that the government's "determination of whether the defendant has cooperated fully and provided substantial assistance, and [its] assessment of the value, truthfulness, completeness and accuracy of the cooperation, shall be binding upon him." The instrument further noted that "[n]o promises, agreements or conditions have been entered into

other than those set forth in this agreement, and none will be entered into unless memorialized in writing and signed by all of the parties."

In the end, the prosecution did not believe defendant had cooperated fully and, even though it made a § 5K1.1 motion, it disparaged Ming He's assistance. The prosecutor detailed defendant's initial reluctance to acknowledge his role in a murder conspiracy and his effort to minimize his criminal involvement. In light of these concerns regarding defendant's cooperation, the prosecution did not call him to be a witness at the multi-defendant restaurant extortion and racketeering trial.

Defense counsel took exception to the prosecutor's comments. Her chief complaint was that the prosecutor improperly failed to notify her that the government was debriefing the defendant. Defense counsel explained that her client's meetings with the prosecutor were held without her permission and outside her presence. She said that had she been present at the debriefings she could have reduced her client's anxiety and resultant confusion, ensured that he understood what was being asked of him, and counseled him to answer the questions more fully. Defense counsel further objected to the government's attempt to penalize Ming He for a supposed lack of candor when responding to the prosecutor's questioning outside the presence of his own counsel.

At the sentencing hearing the prosecutor stated that her failure to give notice to defendant's lawyer was routine, adding that every witness or potential witness in the case was debriefed without counsel being present because that was "standard practice" in the Eastern District prosecutor's office. The sentencing court found the practice unremarkable. Insisting that it is her practice to attend her clients' debriefings, defense counsel strongly objected to the trial court's reliance on the government's description of the sessions. The trial court characterized counsel's practice as "unusual," commenting that most lawyers are uninterested in attending their clients' debriefing sessions. The district judge did not think it necessary for counsel to be at her client's side after he

entered into a cooperation agreement, because all that was expected of him at the debriefing was that he tell the truth.

Ming He's apparent lack of candor—reflected in the negative tone of the § 5K1.1 motion—obviously affected the district court's decision on the length of defendant's prison term. Defendant was given a term of 60 months, only marginally less than the Guidelines range of 63–78 months. In deciding not to downwardly depart further, the sentencing court relied explicitly on defendant's evasiveness at the debriefings. It described him as not very cooperative and said that his lies and minimizations obviously compromised his availability as a prosecution witness, even on those events where the government believed his information was valuable. From the sentence thus imposed, Ming He appeals.

## DISCUSSION

### I Appealability of Sentence

Congress limited a defendant's right to appellate review of his final sentence to a few specific instances: when a sentence is imposed in violation of law; resulted from an incorrect application of the Sentencing Guidelines; is heavier than the upper range of the applicable sentence specified in the Guidelines; or is for an offense not found in the Guidelines. 18 U.S.C. § 3742(a). We have read this statute to mean that when a sentence is based on a demonstrable error of law or some other impermissible consideration, it is reviewable. *See United States v. Colon,* 884 F.2d 1550, 1553 (2d Cir.) (interpreting § 3742(a)(1)), *cert. denied sub nom. Papathanasion v. United States,* 493 U.S. 998, 110 S.Ct. 553, 107 L.Ed.2d 550 (1989). A sentencing court's refusal to depart downwardly, *see, e.g., United States v. Ekhator,* 17 F.3d 53, 55 (2d Cir.1994), and the extent of departure granted upon the government's § 5K1.1 motion, *see, e.g., United States v. Doe,* 996 F.2d 606, 607 (2d Cir.1993) (per curiam), generally are not appealable.

However, when a prosecutor's refusal to make a § 5K1.1 motion is animated by an unconstitutional or other impermissible motive, or where there is government misconduct or bad faith, *United States v. Gonzalez,* 970 F.2d 1095, 1103 (2d Cir.1992), a defendant is entitled to relief. *See Wade v. United States,* 504 U.S. 181, 185–86, 112 S.Ct. 1840, 1843–44, 118 L.Ed.2d 524 (1992). Because a defendant may challenge the government's refusal to make a § 5K1.1 motion when the refusal is premised on an impermissible consideration, it follows, *a fortiori,* that a defendant is also entitled to point out the inadequacy of such a motion, *see United States v. Gangi,* 45 F.3d 28, 31 (2d Cir.1995), and the sentence that results from an alleged impermissible motive or from misconduct is susceptible to appellate review.

### II Debriefing Interview

#### A. *Guidelines Section 5K1.1*

The government's practice of relying on the interviewing of informers is an old one, recognized in the common law, where it was called "approvement." *See* 4 William Blackstone, *Commentaries* *324. The government has always solicited the help of cooperating witnesses to prosecute its cases, *see, e.g., Whiskey Cases,* 99 U.S. 594, 595, 25 L.Ed. 399 (1878); *United States v. Locascio,* 6 F.3d 924, 930, 948 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1646, 128 L.Ed.2d 365 (1994), *and cert. denied sub nom. Gotti v. United States,* —— U.S. ——, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994), and these witnesses, in turn, have traditionally been shown leniency at sentencing. *See Whiskey Cases,* 99 U.S. at 595 ("[S]uch a party, if called and examined by the public prosecutor …, will not be prosecuted for the same offence, provided it appears that he acted in good faith and that he testified fully and fairly."). Cooperating witnesses provide important information for ongoing investigations and often furnish the most damaging testimony against the accused at trial, *see, e.g., Locascio,* 6 F.3d at 930, that which is key to winning convictions, *see, e.g., United States v. Gambino,* 59 F.3d 353, 363 (2d Cir.1995). While the public benefits from the conviction of the guilty, the cooperating witness, by providing "inside" information about his past criminal activities, receives an opportunity to have his sentence reduced.

A crucial part of the process by which a cooperating witness gives information and assistance to the government and is in turn promised a reward at sentencing is the debriefing session. The usefulness to the prosecutor of the defendant's cooperation in debriefing usually determines whether the government will make a § 5K1.1 motion. In order to appreciate the stakes involved at such an interview, we analyze the impact and utility of § 5K1.1 motions on sentencing.

The Sentencing Guidelines obviously have altered the way the sentencing process works, *see United States v. Colon,* 905 F.2d 580, 588 (2d Cir.1990), and the effect on the cooperating witness scenario is no exception. Under the Guidelines, a § 5K1.1 letter allows the district court one of the few opportunities it has to depart downwardly from the Sentencing Guidelines' somewhat rigid grid. Most significant, of course, is the fact that the United States Attorney must first make a motion for § 5K1.1 relief. Only after a motion is made can the district court consider such factors as the usefulness, truthfulness, timeliness, and extent of the cooperating witness's assistance, and any injury or danger suffered by the witness and his family as a result of such assistance. *See* U.S.S.G. § 5K1.1. These factors are weighed by the sentencing judge, but only in determining what the "appropriate reduction" in the cooperating witness's sentence should be. *Id.*

Before the promulgation of § 5K1.1, district judges, not prosecutors, had discretion to decide whether to reduce a sentence based on a defendant's assistance. Daniel J. Freed, *Federal Sentencing in the Wake of Guidelines: Unacceptable Limits on the Discretion of Sentencers,* 101 Yale L.J. 1681, 1712 (1992). Under the Guidelines this sentencing power—of such great moment to a cooperating witness—was transferred from the sentencing court to the prosecutor. *See United States v. Reina,* 905 F.2d 638, 641 (2d Cir.1990). An amendment to empower district judges to act *sua sponte* was proposed, *see* 57 Fed.Reg. 90, 112 (1992) (proposed January 2, 1992), but never enacted.

While prosecutors are "uniquely fit" to decide whether substantial assistance has been rendered, *United States v. Huerta,* 878 F.2d 89, 93 (2d Cir.1989), *cert. denied,* 493 U.S. 1046, 110 S.Ct. 845, 107 L.Ed.2d 839 (1990), it is equally true that a sentencing court is particularly well-positioned—because of its experience—to evaluate the moral worthiness, contrition, and rehabilitation of a defendant. *Gonzalez,* 970 F.2d at 1103; *see also United States v. Agu,* 949 F.2d 63, 65 (2d Cir.1991), *cert. denied,* 504 U.S. 942, 112 S.Ct. 2279, 119 L.Ed.2d 205 (1992). Even so, a downward departure for a cooperating witness may not be granted *sua sponte* by a trial court. *See* U.S.S.G. § 5K1.1; *Wade,* 504 U.S. at 185, 112 S.Ct. at 1843–44; *see also* Donald P. Lay, *Rethinking the Guidelines: A Call For Cooperation,* 101 Yale L.J. 1755, 1770 (1992).

Prosecutors have made use of this discretionary power as a tool in managing their heavy caseloads and the increased reliance on cooperation agreements is a part of this trend. Graham Hughes, *Agreements For Cooperation In Criminal Cases,* 45 Vand. L.Rev. 1, 2–4, 68 (1992). Yet, the absence of any "visible standards to guide the prosecutor's exercise of discretion," *see* Freed, *supra,* at 1711–12, has made the transfer of authority from judges to prosecutors especially troubling. The Supreme Court has noted that "the breadth of discretion that our country's legal system vests in prosecuting attorneys carries with it the potential for both individual and institutional abuse." *Bordenkircher v. Hayes,* 434 U.S. 357, 365, 98 S.Ct. 663, 669, 54 L.Ed.2d 604 (1978). *But cf. United States v. Rexach,* 896 F.2d 710, 714 (2d Cir.) (noting that cooperation agreement limits the government's discretion because of its implied obligation of good faith and fair dealing), *cert. denied,* 498 U.S. 969, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990); *Huerta,* 878 F.2d at 93 (perceiving no danger of prosecutorial wrongdoing in determining whether defendant has rendered "substantial assistance").

As "the equivalent of legislative rules adopted by federal agencies," *Stinson v. United States,* 508 U.S. 36, 45, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993), the Guidelines have the force of law, and courts are obliged to enforce them áccordingly. Nor may judges interfere with the prosecu-

tor's decision either to make or not to make a § 5K1.1 motion, as prosecutorial discretion is traditionally exclusive and absolute. *See United States v. Nixon,* 418 U.S. 683, 693, 94 S.Ct. 3090, 3100, 41 L.Ed.2d 1039 (1974); *Confiscation Cases,* 74 U.S. (7 Wall.) 454, 457, 19 L.Ed. 196 (1869). Of course, there are constitutional limits upon the prosecutor's exercise of her authority. *See United States v. Resto,* 74 F.3d 22, 26 (2d Cir.1996). Judges have an obligation to exercise supervision over the administration of criminal justice in federal courts, a responsibility that "implies the duty of establishing and maintaining civilized standards of procedure and evidence." *McNabb v. United States,* 318 U.S. 332, 340, 63 S.Ct. 608, 613, 87 L.Ed. 819 (1943).

The decision to move for a downward departure for substantial assistance rests in the exclusive discretion of federal prosecutors. Courts, in order to balance this broad executive discretion, must be especially vigilant to preserve a cooperating witness's procedural rights. By exercising supervisory authority in this area, we place a check on the prosecutor's discretion and reduce the danger of prosecutorial over-reaching in what is essentially a relationship tilted heavily towards the government. While we are foreclosed from requiring the government to acknowledge substantial assistance where it honestly believes that such assistance has not been provided, we can take steps to protect the cooperating witness in the debriefing interview.

### B. *Role of Counsel*

A consideration of the role that a defense attorney can play in debriefing demonstrates why we believe a cooperating witness should be entitled, if he chooses, to bring his attorney to such a session. The government believes counsel's role to be minimal because the defendant need only answer questions truthfully. If he answers truthfully, the government avers, defendant need not fear any negative consequences. Were truth-telling all that is involved in debriefing, counsel's presence concededly would add little to the process because the lawyer's role would amount to nothing more than admonishing her client to "tell the truth."

Essentially, the prosecutor's position is that a debriefing session is a minor event and that defense counsel would of necessity be limited to giving advice principally about matters of fact. Although we do not reach the underlying question of whether the Sixth Amendment has been violated, we nonetheless find the relationship between that Amendment and the facts-law distinction—implicitly alluded to by the government—instructive in the present case. The Sixth Amendment's drafters "envisaged a broader role for counsel than under the practice then prevailing in England of merely advising his client in 'matters of law,' and eschewing any responsibility for 'matters of fact.'" *United States v. Wade,* 388 U.S. 218, 224, 87 S.Ct. 1926, 1930, 18 L.Ed.2d 1149 (1967). The Framers sought to abolish this theoretically unsound facts-law distinction, realizing that it artificially distinguished between two inextricably linked aspects of preparing a defense. *See id.*

We guarantee the right to counsel to save the defendant from "falling into traps devised by a lawyer on the other side and to see to it that all available defenses are proffered." *United States v. Bennett,* 409 F.2d 888, 900 (2d Cir.) (Friendly, J.), *cert. denied sub nom. Haywood v. United States,* 396 U.S. 852, 90 S.Ct. 113, 24 L.Ed.2d 101 (1969). If such traps are in fact present, they come clothed in both factual and legal colors. While it is true that the government's questions are aimed at facilitating its own trial preparation rather than "trapping" a cooperating witness, the potential obviously exists for the statements to be used later against the defendant. Thus, counsel has a role to play, even in interviews covering essentially factual matters.

Because the government's understanding of the defense attorney's role is cramped, we decline to adopt it. Counsel can assist her client at a debriefing session in several important ways. First, a lawyer can explain the government's questions while also keeping her client calm. Some defendants are not sophisticated or intelligent enough to grasp a question's purport and may blurt out unthinking answers because the interview process intimidates them. A cooperating

witness walks a swaying tightrope. On the one hand, if he hopes to help himself, he must provide truthful information that will help the government. On the other hand, the witness must exercise some care because he is providing information to the government about his former criminal conspirators, people who may be predisposed to commit violence against him or his family because he is trading information to obtain leniency for himself.

Second, a lawyer can keep her client focused on the fact that while he is seeking the assistance and protection of the government, that entity does not share the defendant's interests even after the execution of a cooperation agreement. Since sentencing is adjourned until defendant's side of the bargain has been performed, the defendant's rights have not been fully adjudicated and the government remains the cooperating witness's adversary. Third, in this setting, a defense attorney might help resolve potential disagreements between the government and the defendant and assist the defendant in clarifying his answers to ensure they are complete and accurate.

Hence, counsel's role could prove to be considerably more important than simply advising her client to tell the truth. The government was in a position to impose grave penalties on Ming He if his assistance turned out to be incomplete or dishonest. For example, it had the power to set aside the cooperation agreement and withdraw its acceptance of his plea, re-indict him on additional charges, and use his statements at the debriefing against him—both directly and indirectly—in a new criminal proceeding. According to the cooperation agreement, a breach by defendant amounted to a waiver of defendant's Fifth Amendment privilege against self-incrimination. We think these constitutional ramifications of the debriefing session serious, and their seriousness strongly supports the appellant's insistence that he have the aid of counsel when the government interviews him.

Fourth, defense counsel can serve as a potential witness at sentencing to the fact that her client fully performed the promise he made to the government. This recon-

struction of the debriefing interview at sentencing—were the district court to hold an evidentiary hearing—is analogous to the role defense counsel plays in avoiding prejudice at a lineup identification. *See Wade,* 388 U.S. at 236–37, 87 S.Ct. at 1937–38. While the district court must take the government's assessment of the defendant's cooperation into consideration when deciding whether or not to downwardly depart, when setting the sentence the trial court ordinarily evaluates defendant's assistance independently. *See* U.S.S.G. § 5K1.1.

This particular potential benefit of counsel is not a factor in the case at bar because the cooperation agreement requires Ming He to accept the government's description of his assistance, that is, its "assessment of the value, truthfulness, completeness and accuracy of the cooperation, shall be binding upon him." Thus, even had defense counsel been present at the debriefings, defendant would have been bound by the government's ultimate assessment of his assistance. However, despite that contractual limitation, counsel's presence might have affected the government's own assessment of defendant's performance; defense counsel's presence surely would have increased defendant's confidence and candor and thereby given the government a reason to present a more favorable description of his assistance.

Moreover, it should be remembered that the government attorney conducting a debriefing is both the defendant's prosecutor and the person who decides whether or not to make a § 5K1.1 motion, a motion that has a critical effect on the amount of time defendant will serve in prison. Most significantly, the refusal by the government to make such a motion is ordinarily unreviewable. The special nature of a § 5K1.1 motion demonstrates that the government debriefing interview is crucial to a cooperating witness. To send a defendant into this perilous setting without his attorney is, we think, inconsistent with the fair administration of justice.

### C: *Lawyer-Client Relationship*

One further notion strengthens our belief that cooperating witnesses should be given the opportunity to bring counsel to debrief-

ing interviews. "Once an accused has a lawyer, a distinct set of constitutional safeguards aimed at preserving the sanctity of the attorney-client relationship takes effect." *Patterson v. Illinois*, 487 U.S. 285, 290 n. 3, 108 S.Ct. 2389, 2393 n. 3, 101 L.Ed.2d 261 (1988) (citing *Maine v. Moulton*, 474 U.S. 159, 176, 106 S.Ct. 477, 487, 88 L.Ed.2d 481 (1985)). In *Moulton*, 474 U.S. at 176, 106 S.Ct. at 487, the Supreme Court concluded that while the Sixth Amendment is not violated whenever the state obtains incriminating statements from a defendant, "knowing exploitation by the State of an opportunity to confront the accused without counsel being present is … a breach of the State's obligation not to circumvent the right to the assistance of counsel." In the case at hand, in which appellant was a cooperating witness, he was also a defendant represented by counsel. During the debriefing interview, the government, acting consistently with the spirit and the letter of the Sixth Amendment and with the fair administration of justice, should have actively facilitated that representation.

We have previously outlined what a prosecutor should do when communicating with represented parties. In *United States v. Pinto*, 850 F.2d 927, 934 (2d Cir.), *cert. denied sub nom. Vence v. United States*, 488 U.S. 867, 109 S.Ct. 174, 102 L.Ed.2d 143, and *cert. denied sub nom. Castano v. United States*, 488 U.S. 932, 109 S.Ct. 323, 102 L.Ed.2d 341 (1988), appellants challenged a prosecutor's conduct because she questioned Mecolta, a convicted prisoner. Mecolta's testimony was sought by the government for use at a subsequent trial; but in giving such testimony Mecolta subjected himself to the possibility of further prosecution for crimes unrelated to his prior conviction. Although the prosecutor arranged for the district court to appoint a lawyer to represent Mecolta, she nevertheless went ahead and questioned him outside the attorney's presence and without the attorney's consent, thereby nullifying the very safeguard she had so carefully arranged. *Id.* at 931. We thought such behavior, particularly in light of Code of Professional Responsibility DR 7–104(A)(1), was ethically questionable. *Id.* at 934–35. The prosecutor had contended in *Pinto* that she had no obligation to ensure Mecolta's counsel's presence when she questioned him because he was "*only* a witness." *Id.* at 935 (emphasis in original). In our view this "*only* a witness" argument was specious. Mecolta was, we found, a potential defendant whose testimony might compromise his Fifth Amendment rights, a circumstance of which the prosecutor was well aware. *Id.*

The present facts are quite similar. Ming He was a potential witness who was also a defendant, and the prosecutor knew he was represented by counsel. And, certain statements by this potential witness could have led to a waiver of his Fifth Amendment immunity and near-certain prosecution. Although we thought that the conduct in *Pinto* was "unseemly," we found no constitutional or ethical violation. *Id.* This was partly because Mecolta himself did not raise a claim; the issue before us concerned the prosecutor's right to Mecolta's testimony. *See id.* at 934.

Today we deal with the case hypothetically noted in *Pinto*. The controversy before us squarely concerns what protections are to be accorded a cooperating witness who is represented by counsel. Both cases originated in the same district, and, though we characterized the prosecutor's conduct in *Pinto* as "unseemly," the hint to make some sort of change apparently was not acted upon. Instead, the government's conduct in this case, we are told, is not a rare occurrence but "standard practice." This "standard practice," while it may or may not pass constitutional muster, is one that should be abandoned. We have previously given "clear warnings," *United States v. Estepa*, 471 F.2d 1132, 1137 (2d Cir.1972) (explaining that clear warnings must be followed by prosecutorial action), to prosecutors regarding their dealings with represented witnesses. In light of the government's failure to heed *Pinto*'s "should not" admonition, we cannot yet again rely on precatory words but must use the unmistakable word "vacate." *See United States v. Oshatz*, 912 F.2d 534, 541 (2d Cir.1990) (noting the hazards of noncompliance with our hortatory comments), *cert. denied*, 500 U.S. 910, 111 S.Ct. 1695, 114 L.Ed.2d 89 (1991).

## D. *Supervisory Authority Exercised*

With this background in mind, we turn to the merits of the case at hand. A federal court, "guided by considerations of justice," *McNabb,* 318 U.S. at 341, 63 S.Ct. at 613, may exercise its supervisory powers to formulate procedural rules not mandated by the Constitution. *See United States v. Hasting,* 461 U.S. 499, 505, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983). Were this a case arising out of our habeas corpus jurisdiction, *see* 28 U.S.C. § 2254, in which we assess the constitutionality of a state proceeding, we would have to decide the constitutional claim if squarely raised. However, our authority to review procedures used in federal courts is not limited solely to ascertaining whether they are constitutionally valid. *See McNabb,* 318 U.S. at 340, 63 S.Ct. at 612–13.

It is our task to supervise the administration of justice in the federal courts, and to that end we must ensure that fair standards of procedure are maintained. *See id.* Our supervisory authority extends to sentencing, *United States v. Perez,* 904 F.2d 142, 148 (2d Cir.), *cert. denied,* 498 U.S. 905, 111 S.Ct. 270, 112 L.Ed.2d 226 (1990), and *cert. denied sub nom. Garcia v. United States,* 498 U.S. 1124, 111 S.Ct. 1085, 112 L.Ed.2d 1189 (1991), particularly when we are dealing with a procedure for which a uniform practice is called for. *See United States v. Coke,* 404 F.2d 836, 845 (2d Cir. 1968) (*in banc*) (Friendly, J.). Other courts have found that exercise of supervisory authority is appropriate when needed to guarantee the defendant a fair sentencing proceeding. *See United States v. Herrera–Figueroa,* 918 F.2d 1430, 1434 (9th Cir. 1990). Similarly, a fair proceeding must not be influenced by improperly based disparaging comments (such as those used here) in the government's § 5K1.1 motion.

Thus, we may require lower courts to adhere to procedures deemed desirable as a matter of sound judicial practice even though the procedures may not be directed either by statute or the Constitution. *See United States v. Jacobs,* 547 F.2d 772, 776 (2d Cir.1976), *cert. granted,* 431 U.S. 937, 97 S.Ct. 2647, 53 L.Ed.2d 254 (1977), and *cert. dismissed,* 436 U.S. 31, 98 S.Ct. 1873, 56 L.Ed.2d 53 (1978). On occasion, and we think this is one, we must act to secure rights even though they may not be guaranteed by the Constitution when we are persuaded a procedure followed in a trial court is wrong. *See Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *In Re N.D.N.Y. Grand Jury Subpoena (United States v. Grand Jury Witness),* 811 F.2d 114, 118 (2d Cir.1987).

Of course, our supervisory authority is not a form of free-floating justice, untethered to legal principle. Attempts by courts, for example, to use the otherwise broad supervisory authority as a substitute for Fourth Amendment jurisprudence, which adequately safeguards against unlawful searches and seizures, have been rejected. *United States v. Payner,* 447 U.S. 727, 735, 100 S.Ct. 2439, 2446, 65 L.Ed.2d 468 (1980). However, *Payner* did not paint with a broad brush. It did not purport to "limit the traditional scope of the supervisory power," nor did it "render that power 'superfluous.'" *Id.* at 736 n. 8, 100 S.Ct. at 2447 n. 8. *Payner* simply rejected reliance on supervisory power as a substitute for the Fourth Amendment. We too have recognized that courts cannot "fashion their own 'sub-constitutional' limitations on the conduct of law enforcement agents." *United States v. Myers,* 692 F.2d 823, 847 (2d Cir.1982), *cert. denied,* 461 U.S. 961, 103 S.Ct. 2437, 2438, 77 L.Ed.2d 1322 (1983); *see also United States v. Lau Tung Lam,* 714 F.2d 209, 210 (2d Cir.), *cert. denied,* 464 U.S. 942, 104 S.Ct. 359, 78 L.Ed.2d 322 (1983) (explaining that supervisory power over DEA conduct in a sting operation is "extremely limited").

This particular exercise of supervisory power is not an encroachment on the conduct of executive branch officials, that is, we are not attempting to govern the conduct of federal agents whose task is to investigate and prevent criminal activity. *See N.D.N.Y. Grand Jury Subpoena,* 811 F.2d at 118. Rather, we are enforcing our general supervisory authority over members of the bar of this Court, lawyers who are at the same time United States attorneys, *see United States v. Hammad,* 858 F.2d 834, 837 (2d Cir.1988), *cert. denied,* 498 U.S. 871, 111 S.Ct. 192, 112

L.Ed.2d 154 (1990), and directing the district courts not to further this practice relied on by a federal prosecutor. Because this subject is within the traditional role of the Court, it does not run afoul of *Payner*.

The federal prosecutor, by establishing a standard practice which created what we think are serious constitutional questions, raised a red flag that attracted our attention. There is a broad presumption that the right to counsel attaches in this sort of setting—a confrontational, post-indictment interview by the government. *See Patterson*, 487 U.S. at 290, 108 S.Ct. at 2393 (explaining that "there can be no doubt" that a right to counsel exists in post-indictment government interviews).

When the Ninth Circuit exercised its supervisory authority to allow defendants to have counsel in probation interviews, it explained that "whenever important interests of a defendant are at stake, the defendant is entitled to be represented by a lawyer." *Herrera–Figueroa*, 918 F.2d at 1436. In addition, there are strong rules that protect the sanctity of the lawyer-client relationship. We made plain in *Pinto* that a federal prosecutor meeting with a represented party outside of his attorney's presence is a practice we disfavor. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 259, 108 S.Ct. 2369, 2375–76, 101 L.Ed.2d 228 (1988) (indicating that exercise of supervisory authority might be predicated on prosecutorial misconduct spanning several cases and raising question about process's fundamental fairness); *United States v. Brito*, 907 F.2d 392, 394 (2d Cir.1990). Whatever may be the constitutionality of the standard practice challenged in the instant case, it is in our opinion inconsistent with the fair administration of criminal justice.

Consequently, in the exercise of our supervisory authority, we rule that cooperating witnesses are entitled to have counsel present at debriefings, unless they explicitly waive such assistance.

### III  Waiver Considerations

■  A defendant is not required to invite counsel to accompany him to a debriefing session, nor is the government prevented from conditioning a cooperation agreement on the defendant's waiver of this protection. In short, defense counsel's assistance is waivable. *See Faretta v. California*, 422 U.S. 806, 832, 835, 95 S.Ct. 2525, 2539–40, 45 L.Ed.2d 562 (1975).

■  The government asserts—in the context of refuting Ming He's contention that he had a constitutionally guaranteed right to counsel—that Ming He waived any claim to be represented by counsel in the debriefings. Although the cooperation agreement does waive several rights and protections, it does not explicitly waive defendant's right to counsel. And, since the agreement expressly disclaims the existence of any "promises, agreements or conditions" other than those expressly included, the government may only urge that defendant *implicitly* waived a right to counsel, either by not asking for counsel to be present or because counsel failed to ascertain the specific times and locations of the debriefings and to appear at those times and places.

The government maintains that Ming He waived his right to counsel, relying on *United States v. Cortes*, 922 F.2d 123, 127–28 (2d Cir.1990), and *Colon*, 905 F.2d at 588. Such a view misapprehends the purport of those holdings. In those cases, which concerned the absence of counsel at probation interviews, we ruled that a right-to-counsel argument was waived because of a failure to object or otherwise preserve the issue for appeal. *See Colon*, 905 F.2d at 588 ("Colon has waived this argument"); *Cortes*, 922 F.2d at 128 (noting the defendant's failure to "raise his Sixth Amendment objection in the district court" and finding *Colon* "controlling"). The facts are to the contrary in the case at bar, in which defense counsel twice objected to the government's meetings with the defendant outside her presence, first in a letter to the district court and again at the sentencing hearing.

■  In addition, the fact that appellant's attorney knew her client would be debriefed sometime, but failed to take the initiative to learn the details of time and place, does not establish waiver. The government's affirmative obligation to respect and preserve

an accused's election to retain counsel requires it to do more than simply refrain from preventing counsel from being present to assist her client. *See Moulton,* 474 U.S. at 170–71, 106 S.Ct. at 484–85. Instead, it directs the state to take reasonable steps to facilitate such contact.

Here there is no implied waiver. As in the context of the right to counsel, a waiver is valid only when "it can be shown from the record that the waiver was made knowingly and intelligently," *United States v. Purnett,* 910 F.2d 51, 54–55 (2d Cir.1990), and we must "indulge in every reasonable presumption against waiver," *Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977). Silence standing alone is not enough. *See Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966) (discussing waiver of Fifth Amendment right to counsel); *see also Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962) ("Presuming waiver from a silent record is impermissible."). Only if silence is joined with some showing that defendant, having comprehended his rights, nonetheless thereafter followed a course of conduct suggesting an abandonment of his entitlement to counsel, may an implied waiver be found. *See North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979); *United States v. Auen,* 864 F.2d 4, 5 (2d Cir.1988) (per curiam). Even in such circumstances a defendant's relinquishment may not be presumed; the prosecution is required to prove it. *Butler,* 441 U.S. at 373, 99 S.Ct. at 1757. Here, defendant's silence and his participation in the debriefing sessions did not constitute waiver. More than a failure to request counsel and subsequent conversations with the prosecutor pursuant to a cooperation agreement are required to find waiver in the debriefing context.

For purposes of clarity, it is helpful to explain precisely what is required. Defendant and his counsel should be given reasonable notice of the time and place of the scheduled debriefing so that counsel might be present. A cooperating witness's failure to be accompanied by counsel at debriefing may later be construed as a waiver, providing defendant and counsel have had notice so that the consequences of counsel's failure to attend could be explained to defendant. *Cf. Auen,* 864 F.2d at 5 (holding that defendant's failure to obtain counsel, despite opportunities to do so, implied a waiver of counsel); *United States v. Weninger,* 624 F.2d 163, 167 (10th Cir.) (holding that stubborn failure to hire attorney after being told disadvantages constituted waiver of counsel at trial), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980). Alternatively, waiver can be set forth expressly in the cooperation agreement. Since the issue is not before us, we express no view on the precise extent of what can be waived or the form that such a waiver might take.

Moreover, when a defendant is sentenced—unless he specifically alleges that he was denied the assistance of counsel and asks for a hearing on this subject—the issue is waived. This is akin to our rule that a defendant must claim that the prosecutor acted in bad faith before a sentencing court will entertain challenges to the government's decision not to move for a downward departure for substantial assistance under § 5K1.1. *See United States v. Khan,* 920 F.2d 1100, 1106 (2d Cir.1990), *cert. denied,* 499 U.S. 969, 111 S.Ct. 1606, 113 L.Ed.2d 669 (1991).

In sum, what the government may *not* do is what it did here—conduct debriefing interviews without giving reasonable advance notice to the defendant, through his attorney, in order to permit him to be represented if he so chooses. A cooperation agreement is not a waiver of all of a cooperating witness's rights and protections. As stated earlier, and as this case demonstrates, the "cooperating witness is not a strong candidate for sympathy." Hughes, *supra,* at 40. Such a witness often will receive a lighter sentence than his criminal activity merits. Nonetheless, however one may appraise a cooperating witness's moral worth, we are concerned that by preventing a witness from bringing his attorney to a debriefing interview, the government is expanding its discretion in a way unauthorized by the Guidelines. By not providing the witness in this case the opportunity to bring his retained counsel, the gov-

ernment tipped the balance in its dealings with a cooperating witness in a way that is "unseemly," *Pinto,* 850 F.2d at 935.

 Further, since the district court explicitly relied on defendant's lack of candor, its sentencing error was not harmless. Plainly, this factor influenced the sentencing court's selection of the sentence. *See Williams v. United States,* 503 U.S. 193, 203, 112 S.Ct. 1112, 1120–21, 117 L.Ed.2d 341 (1992) (holding remand required where consideration ·of impermissible factors affected length of sentence). Reading the entire record leads us additionally to reject the government's contention that resentencing is unnecessary because the negative comments in the government's § 5K1.1 letter might have been based entirely on defendant's conduct before signing the cooperation agreement and might therefore have constituted a source independent of the alleged illegality. Hence, since defendant was sentenced in violation of law, his sentence must be vacated. *See* 18 U.S.C. § 3742(f)(1).

### IV   Remand For Resentencing

Defendant requests that the case, upon remand for resentencing, go before a different judge. This is only done where special circumstances warrant it, that is, where we are persuaded that the original judge would have substantial difficulty in putting out of her mind her previously expressed views, or where reassignment is advisable to preserve the appearance of justice. *United States v. Robin,* 553 F.2d 8, 10 (2d Cir.1977) (in banc) (per curiam). No special circumstances here suggest reassignment before a different judge and we decline therefore to take such action.

Of course, on remand, the government cannot withdraw its § 5K1.1 motion, as that action under the circumstances would be a violation of defendant's due process rights protected by the Fifth Amendment. *Cf. Blackledge v. Perry,* 417 U.S. 21, 28–29, 94 S.Ct. 2098, 2103, 40 L.Ed.2d 628 (1974) (holding that "it was not constitutionally permissible for the State to respond to [defendant's] invocation of his statutory right to appeal by bringing a more serious charge against him prior to the trial *de novo* ").

Finally, as we have already concluded that defendant should be resentenced, his additional contention that he should be resentenced due to a potential violation of the prosecutor's ethical obligations under either DR 7–104 of the Model Code of Professional Responsibility or the newly promulgated federal regulation on this subject, 28 C.F.R. pt. 77 (1995), need not be addressed.

### CONCLUSION

Accordingly, we vacate the judgment appealed insofar as it imposed sentence on defendant and remand to the district court for it to resentence defendant reconsidering the remarks made in the § 5K1.1 motion disparaging defendant's cooperation which derive from whatever occurred during the debriefing sessions at which he was not represented by counsel.