KAREN NELSON MOORE, Circuit Judge,
dissenting.
After his indictment on various drug-related charges and without having entered into a plea agreement with the government, Karl Wingo participated in several sessions during which he waived his Fifth Amendment privilege against self-incrimination and debriefed the government on the details of the crimes with which he had been charged. It is unclear how much Wingo had spoken with his counsel, Stephen Glass, up to this point, but it appears that they met on only one occasion and spoke almost exclusively by telephone, as Glass’s practice was based in Florida.[1] Although I express no opinion on whether Glass was “totally absent” from Wingo’s initial debriefing session, during which Wingo spoke with Glass by telephone, it is undisputed that Glass was totally absent from the four subsequent debriefing sessions. Because I believe that these debriefing sessions were a “critical stage” of the proceedings, I would presume that Wingo was prejudiced by his counsel’s absence and therefore was deprived of his Sixth Amendment right to the assistance of counsel pursuant to United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).
Claims of ineffective assistance of counsel generally are reviewed under the well-established test set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. *136 2052, 80 L.Ed.2d 674 (1984), which requires the petitioner to show that the counsel’s performance was both deficient and prejudicial to the defense. “It is well settled,” however, “that a complete absence of counsel at a critical stage of a criminal proceeding is a per se Sixth Amendment violation warranting reversal of a conviction, a sentence, or both, as applicable, without analysis for prejudice or harmless error.” Van v. Jones, 475 F.3d 292, 311-12 (6th Cir.2007). In Cronic, decided the same day as Strickland, “the Supreme Court held that an appeals court must reverse a criminal defendant’s conviction ‘without any specific showing of prejudice to defendant when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding.’ ” Mitchell v. Mason, 325 F.3d 732, 740 (6th Cir.2003) (quoting Cronic, 466 U.S. at 659 n. 25, 104 S.Ct. 2039). Therefore, while the Strickland test “provides guidance for resolving virtually all ineffective assistance of counsel claims, there are ‘a few situations in which prejudice may be presumed,”’ including the absence of counsel during a critical stage of the proceedings. Id. (quoting Williams v. Taylor, 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).
The Supreme Court has not laid out “a comprehensive and final one-line definition of ‘critical stage.’ ” Van, 475 F.3d at 312. Most recently, the Court stated that a critical stage is “a step of a criminal proceeding ... that h[olds] significant consequences for the accused.” Bell v. Cone, 535 U.S. 685, 696, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). A critical stage is one at which “[available defenses may be [ ] irretrievably lost,” Hamilton v. Alabama, 368 U.S. 52, 53, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), and “where rights are preserved or lost,” White v. Maryland, 373 U.S. 59, 60, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963). The Court has emphasized that the determination requires “an analysis ‘whether potential substantial prejudice to defendant’s rights inhered in the ... confrontation and the ability of counsel to help avoid that prejudice.’ ” Coleman v. Alabama, 399 U.S. 1, 9, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) (alteration in original) (quoting United States v. Wade, 388 U.S. 218, 227, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)). We also should consider whether the stage is adversarial in nature so that “the accused required aid in coping with legal problems or assistance in meeting his adversary.” United States v. Ash, 413 U.S. 300, 313, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973).
A variety of post-indictment, pretrial proceedings have been found to be “critical stages.” See, e.g., Michigan v. Jackson, 475 U.S. 625, 629-30, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986) (noting that, after arraignment, “government efforts to elicit information from the accused, including interrogation, represent ‘critical stages’ at which the Sixth Amendment applies”), overruled on other grounds, Montejo v. Louisiana, — U.S.-, 129 S.Ct. 2079, 2085, 173 L.Ed.2d 955 (2009); King v. Bobby, 433 F.3d 483, 490 (6th Cir.2006) (“Plea negotiations, guilty plea hearings, and sentencing hearings are all ‘critical stages’ at which the right to counsel attaches.”). Because government debriefings may hold significant consequences for the accused with respect to waiver of his or her Fifth Amendment right against self-incrimination, negotiation of a plea agreement, and sentencing, I believe that post-indictment debriefings are a critical stage for purposes of the Sixth Amendment.
In Estelle v. Smith, the Supreme Court emphasized the importance of counsel when a defendant considers waiving his or her Fifth Amendment right against self-incrimination: “Because ‘[a] layman may *137 not be aware of the precise scope, the nuances, and the boundaries of his Fifth Amendment privilege,’ the assertion of that right ‘often depends upon legal advi[c]e from someone who is trained and skilled in the subject matter.’ ” 451 U.S. 454, 471, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) (first alteration in original) (quoting Maness v. Meyers, 419 U.S. 449, 466, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975)). The Court concluded that consent to a psychiatric interview was a critical stage in pretrial proceedings such that the defendant’s Sixth Amendment right to counsel was violated when the defendant was not given an opportunity to consult with his counsel before participating in a psychiatric examination. Although the repercussions of a psychiatric examination may be different from those of debriefing sessions, both involve the defendant’s decision to waive certain Fifth Amendment rights, and in both circumstances “a defendant should not be forced to resolve such an important issue without ‘the guiding hand of counsel.’ ” Id. (quoting Powell v. Alabama, 287 U.S. 45, 69, 53 S.Ct. 55, 77 L.Ed. 158 (1932)).
Aside from the waiver of the Fifth Amendment right against self-incrimination, debriefings hold the potential for prejudice to the accused which may be avoided with the assistance of counsel. In United States v. Ming He, 94 F.3d 782 (2d Cir.1996), the Second Circuit discussed at length the important role of counsel at debriefings in considering whether a defendant was entitled to have counsel present during debriefing sessions held after the defendant had, with the assistance of counsel, pleaded guilty and signed a cooperation letter. Although the court did not reach the underlying Sixth Amendment issue, the court used its supervisory powers to conclude “that cooperating witnesses are entitled to have counsel present at debriefings, unless they explicitly waive such assistance.” Id. at 793. Rejecting the government’s argument that “a debriefing session is a minor event and that defense counsel would of necessity be limited to giving advice principally about matters of fact,” the court discussed several ways in which counsel’s assistance may be crucial at a debriefing session. Id. at 789. “First, a lawyer can explain the government’s questions while also keeping her client calm,” preventing the defendant from “blurt[ing] out unthinking answers.” Id. “Second, a lawyer can keep the client focused on the fact that while he is seeking the assistance and protection of the government, that entity does not share the defendant’s interests even after the execution of a cooperation agreement.” Id. at 790. Contrary to the government’s argument in this case, the court noted that a debriefing is an adversarial proceeding, because “the defendant’s rights have not been fully adjudicated.” Id. “Third, in this setting, a defense attorney might help resolve potential disagreements between the government and the defendant in clarifying his answers to ensure they are complete and accurate.” Id. Fourth, “defense counsel can serve as a potential witness at sentencing to the fact that her client fully performed the promise he made to the government.” Id. Finally, the court noted that the outcome of the debriefing sessions would impact whether the government made a motion for a downward departure under § 5K1.1 of the United States Sentencing Guidelines, “a motion that has a critical effect on the amount of time defendant will serve in prison”:
Most significantly, the refusal by the government to make such a motion is ordinarily unreviewable. The special nature of a § 5K1.1 motion demonstrates that the government debriefing interview is crucial to a cooperating witness. To send a defendant into this *138 perilous setting without his attorney is, we think, inconsistent with the fair administration of justice.

Id.

All of these reasons make clear that Wingo’s debriefing sessions were adversarial in nature and also were stages at which aspects of Wingo’s Fifth Amendment right against self-incrimination were “irretrievably lost.” Hamilton, 368 U.S. at 53, 82 S.Ct. 157. Moreover, the consequences that the debriefings held for Win-go were in many respects more substantial than those faced by the defendant in Ming He because, unlike Ming He, Wingo had not yet entered into a plea agreement when he debriefed. Therefore, not only was his sentence dependent upon the debriefings, but the debriefings were crucial to the plea negotiations. Cf King, 433 F.3d at 490 (noting that plea negotiations are a critical stage of criminal proceedings). Based on these debriefings, the government would determine the terms of the plea agreement and whether the government would be willing to enter into a plea agreement at all. The importance of the debriefings is exemplified by the fact that, after the debriefings broke down, Wingo did not reach a plea deal with the government and the case proceeded to trial. The mere fact that Wingo had signed the Kastigar letter does not mean that the government was no longer his adversary, and the debriefings surely held significant consequences for Wingo.
I recognize that, in practice, some defense counsel may not attend debriefing sessions subsequent to the first session and that there may be benefits to the cooperation process if a defendant is able to meet with the government without his counsel present. As at any other stage of criminal proceedings, however, a defendant may affirmatively waive his or her right to have counsel present during the debriefing sessions, as long as this waiver is made voluntarily, knowingly, and intelligently. See Estelle, 451 U.S. at 471 n. 16, 101 S.Ct. 1866. In some cases, counsel may determine that the debriefings would proceed more smoothly without counsel present, and in such cases counsel may advise the defendant to waive his right to have counsel present at the debriefings. Here, there is no indication that Wingo made any knowing and intelligent waiver of counsel. I therefore would conclude that Wingo’s Sixth Amendment rights were violated by his counsel’s failure to attend the vast majority of his debriefing sessions.
Regarding Wingo’s separate appeal of the district court’s denial of bond pending appeal, I would conclude that we have no jurisdiction over this appeal because no certificate of appealability was issued in that appeal. Although denial of bond pending habeas review is appealable under the collateral-order doctrine, Dotson v. Clark, 900 F.2d 77, 78 (6th Cir.1990), we have held “that a certificate of probable cause[2] is a prerequisite to appealing the denial of a bail motion in a habeas proceeding,” Lee v. Jabe, 989 F.2d 869, 871 (6th Cir.1993). The district court specifically denied a certificate of appealability on the issue of the denial of bond, and, in response to Wingo’s notice of appeal of the denial of bond, this court refused to expand the certificate of appealability beyond the one issue certified by the district court. Therefore, under Lee, I would conclude that we do not have jurisdiction over Win- *139 go’s appeal of the district court’s denial of bond.

. Glass, who was not a member of the Michigan state bar when he represented Wingo, was disbarred by the Florida Supreme Court two years later.

. The pre-AEDPA version of Rule 22 of the Federal Rules of Appellate Procedure referred to the requirement for a “certificate of probable cause,” but the current rule uses the term "certificate of appealability.” Fed. R.App. P. 22(b)(1).